# MAY 10, 1933

## MARIA H. BENAVIDES V. THE STATE.

No. 15735: Delivered May 10, 1933.
Reported in 60 S. W. (2d) 436.

The opinion states the case.

*Perkins & Floyd,* and *Lloyd & Lloyd,* all of Alice, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Appellant was convicted of being an accomplice in the crime of murder, and her punishment fixed at confinement in the penitentiary for 99 years.

It was charged in the indictment, in substance, that Carlos Galindo, with malice aforethought, killed Jesus A. Benavides by shooting him with a gun, and that, prior to the commission of said offense by the said Carlos Galindo, appellant, in order to procure the commission of said offense, unlawfully, wilfully and with malice aforethought, promised to pay the said Galindo

a portion of the money proceeds of insurance policies on the life of said Jesus A. Benavides. Further, it was averred that appellant was not present at he time of the commission of said offense by Galindo. We have not undertaken to set out the indictment in its entirety.

Deceased was appellant's husband. In March, 1931, appellant conferred with an insurance agent relative to securing a policy on the life of her husband. Later the agent talked to deceased about the policy, and was advised by deceased that he did not desire insurance of any character. In May, 1931, appellant presented to the agent an application for a policy in the sum of $1,000 on the life of her husband. This application was purportedly executed by deceased. However, the state's proof was to the effect that the signature on the application was not that of deceased. The testimony of the agent was to the effect that deceased advised him at the time he delivered the policy to him that he did not want it as "somebody might have a man to take the insurance and he might be bumped off for it." At all events, the policy was finally delivered, and was in effect at the time of the death of deceased.

Several witnesses for the state testified that appellant endeavored to hire them to kill deceased, saying that she had two insurance policies which she could collect in the event of deceased's death. These witnesses, according to their testimony, told appellant they would have nothing to do with the matter. Appellant then insisted that they procure some one who would be willing to kill deceased. Again, according to the version of the witnesses, shortly prior to the death of deceased, appellant stated to them that she had entered into an agreement with Carlos Galindo, wherein Galindo had obligated himself to kill deceased for one hundred and fifty dollars. These witnesses testified that appellant told them that she would secure the money to pay Galindo out of the proceeds of the policies on deceased's life. One of the witnesses declared that appellant had requested him to bring Galindo to her house. He said that he went with Galindo to the home of appellant and remained there more than an hour while appellant and Galindo conversed out of his presence and hearing. He said, further, that Galindo stated to him when they left the house that he had entered into a business arrangement with appellant. Another of the witnesses testified that Galindo stated to him prior to the homicide that he had agreed with appellant to kill deceased. There was testimony on the part of the state to the effect that appellant had made an effort to have deceased poisoned.

Deceased was night watchman. On the night of May 3,

1932, he was found lying outside of the gate of the residence of one Garcia, mortally wounded. A shot had taken effect in his right side. Upon being questioned, deceased stated that he did not know who shot him. There were tracks in the vicinity of Garcia's premises. Witnesses testified to the similarity between these tracks and those made by the shoes worn by Carlos Galindo. A gun was found in a creek near the scene of the homicide. This gun was shown to have been recently possessed by Galindo.

Witnesses for the state testified that shortly after the homicide Carlos Galindo stated to them that he had killed deceased pursuant to his agreement with appellant. There was also testimony on the part of the state to the effect that appellant had stated to certain witnesses that Galindo had carried out his agreement to kill deceased. After the death of deceased, appellant filed her claim for the proceeds of the insurance policies.

Testifying in her own behalf, appellant denied that she procured Galindo to kill deceased. Again, she denied that she had made any effort to employ any person to bring about the death of deceased. Her testimony, if believed, would have entirely exculpated her. The testimony of appellant's witnesses raised the issue of insanity.

Praxedis Arredondo, testifying for the state, declared that, in response to requests on the part of appellant, he had gone to appellant's home on several occasions about a month prior to the death of deceased. He said that during these visits appellant had asked him to kill deceased, and that when he declined she asked him to find some one who would agree to commit the offense. He testified that he told appellant that he was afraid to kill deceased. He said that on each occasion he refused to have anything to do with the matter. He admitted that on one occasion he carried a note to one Biggs for appellant after appellant had stated to him that Biggs might be willing to kill deceased. He testified that Biggs opened the note in his presence, and that, seeing his (witness') name written in the note, he took a pencil and erased his name, telling Biggs that he did not want his name in it. He testified further that, after Biggs had read the note, he told him (the witness) to advise appellant that he would not kill deceased; that he agreed to do this, and did tell appellant that Biggs was unwilling to kill deceased; that appellant told him she did not need him any more, as she had already found some one who would kill deceased; that she had procured the services of Carlos Galindo, who had agreed to kill deceased for one hundred and fifty dollars. The witness testified, further, that Galindo later told him

that he had agreed to kill deceased. Further, the witness said that, after the homicide, Galindo stated to him that, pursuant to his agreement with appellant, he had killed deceased. He said Galindo told him not to tell about the matter and stated to him that he would kill him if he gave him away. He said he agreed not to divulge the matter to the authorities. The witness further testified that he went to one Saurez in Laredo on a mission for appellant, and that, seeing Saurez, he told him that appellant had sent him word that Carlos Galindo had killed deceased. The witness admitted that he had been having illicit relations with appellant for some time.

The court submitted the issue as to whether the witness Arredondo was an accomplice, instructing the jury as follows: "Now, if you are satisfied from the evidence that the witness Praxedis Arredondo was an accomplice, or you have a reasonable doubt as to whether he was or not, as that term is defined in the foregoing instructions, then you are instructed that you can not convict the defendant upon his testimony unless you first believe that the testimony of said Praxedis Arredondo is true, and that it tends to connect the defendant with the offense charged in the indictment, and unless you further believe there is other evidence in the case, corroborative of the testimony of said Praxedis Arredondo tending to connect the defendant with the commission of the offense charged."

Appellant timely and properly excepted to the foregoing instruction. The vice in the charge is that it authorizes the conviction of appellant upon the testimony of an accomplice, which "tends" to show that appellant committed the offense charged, provided such accomplice is corroborated by other evidence "tending" to connect the appellant with the offense. In condemning a similar charge, this court, in Oates v. State, 51 Texas Crim. Rep., 449, 103 S. W., 859, 861, used language as follows: "It authorizes the conviction of appellant upon the testimony of an accomplice which 'tends' to show that appellant committed the offense charged, provided he is corroborated by evidence 'tending' to connect the defendant with the offense. So this charge, condensed, may be stated to announce the proposition that, if an accomplice detailed evidence which 'tends' to show an accused party guilty, it is sufficient, provided there is corroboration tending to connect the defendant with the offense charged. So we have, in the place of evidence which must prove beyond a reasonable doubt the guilt of the accused, facts from two sources, one legally discredited, which tends to show guilt. This is not legally sufficient. Facts must do more than 'tend' to show guilt. They must be cogent enough

to overcome the presumption of innocence and reasonable doubt." See, also, Alsup v. State, 49 S. W. (2d) 749; Grant v. State, 60 Texas Crim. Rep., 358, 132 S. W., 350. In view of the fact that Arredondo was one of the most material witnesses testifying for the state, and that his testimony was relied upon largely by the state to connect appellant with the homicide, we are unable to reach the conclusion that the charge fails to present reversible error.

It is not clear that Arredondo is not an accomplice as a matter of law. However, appellant lodged no exception to the charge on the ground that the court failed to instruct the jury that the witness was an accomplice. On the contrary, appellant's special charge on the subject proceeded upon the theory that it was for the jury to determine, under all the facts and circumstances, whether the witness was an accomplice. Hence we pretermit further discussion of the question.

Appellant objected to the charge of the court for its failure to sumbit to the jury the issue as to whether state's witness Guadalupe Nino was an accomplice. We think the issue should have been submitted. The state introduced the declaration of appellant, testified to by Arredondo, that she had sent Guadalupe Nino after Carlos Galindo, and that, after a conversation with Galindo, she had entered into an agreement with him (Galindo) to kill deceased. Nino testified that he had had several conversations with appellant in which appellant had insisted that he kill deceased. He said he had declined, saying that he would have nothing to do with the matter. He testified that appellant then asked him if he thought that Galindo would kill deceased. He testified, further, that later appellant requested him to tell Galindo to come to her house as she wanted to speak with him. He said that he thereafter saw Galindo and delivered appellant's message. He testified that he went with Galindo to appellant's home and there appellant and Galindo carried on a conversation out of his presence and hearing. He testified, further, that, as they were leaving the house, he asked Galindo what appellant wanted, and that Galindo replied that it was business she talked about. Nino said, further, notwithstanding deceased was his friend, and that he knew appellant was trying to hire some one to kill him, he did not at any time tell deceased about the matter. Further, he testified that, after he had been placed in jail, he made written statements to the authorities concerning what he knew about the case. He said: "They didn't agree to turn me loose until I had signed these statements." However, he did testify that.

prior to being placed in jail he made substantially the same statement to a deputy sheriff.

When applied to evidence, the term "accomplice" means a person who, as a principal, accomplice, or accessory, is connected with the crime by an unlawful act or ommission on his part, transpiring either before, at the time of, or after, the commission of the offense, and whether or not he was present and participated in the crime. Dooley v. State, 7 S .W. (2d) 96; Haynes v. State, 18 S. W. (2d) 1081, and authorities cited. It is the general rule that, where one who has taken part in the commission of an offense endeavors by his own testimony to show his innocent intent, his relation to the crime becomes a question of fact, and the jury must be called upon to determine whether or not he is an accomplice witness. However, when the innocent intent is shown without controversy by witnesses other than the supposed accomplice, an exception to the rule obtains. Pauly v. State, 93 Texas Crim. Rep., 183, 246 S. W., 375.

It was proved by some of the witnesses for the state that prior to the homicide Galindo declared to them that appellant had hired him to kill deceased. Further, the state proved by certain witnesses that, several days after deceased had been killed, Galindo stated to them that, pursuant to his agreement with appellant, he had killed deceased. Appellant was not present when the declarations in question were made. As to such declarations the court instructed the jury, in substance, that they could not be used as evidence against appellant for any purpose, except for the purpose of showing the guilt of Galindo, unless the jury believed beyond a reasonable doubt that at the time such statements or declarations were made, if they were made, there was a common design between appellant and Galindo to kill deceased, and that such declarations were made by Galindo in furtherance of the common design. The declarations do not appear to have been made in furtherance of the common design. On the contrary, they were, in our opinion, simply a narration of the fact that a conspiracy had been entered into between Galindo and appellant to kill deceased. In Choice v. State, 106 S. W., 387, it is said that, wherever there is an attempt or an offer to use the statements of one co-conspirator against another, made in the absence of the other, it will be rejected, unless the statements are in fact in furtherance of the common design. The court said: "The fact that Post told Lott that he and another, or others, were going to kill hogs, was not in furtherance of the common design, and it would not be used against the alleged absent co-

conspirator \* \* \*." In Hays v. State, 236 S. W., 463, it was said that a couspiracy can not be proved by the acts and declarations of others in the absence of the accused. To the same effect are Newsome v. State, 249 S. W., 477, and Hill v. State, 18 S. W. (2d) 1086. In the present case, in addition to objecting to the charge the court gave, appellant timely and properly sought to have the court limit the declarations to the question as to whether Galindo (the principal) killed deceased. We think the charge should have been amended, and the jury given an instruction limiting the testimony touching the declarations of Galindo to the purpose for which such testimony was admissible. See Branch's Annotated Penal Code, sec. 71.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.