Harry Michael **MARLO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 472–84.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Matthew B. Edquist, Daniel W. Shindler, Bay City, for appellant.

Jim Mapel, Dist. Atty. & Jim Turner, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of murder, his punishment assessed by the jury at 60 years confinement in the Texas Department of Corrections.

On appeal appellant argued that the trial court erred in failing to instruct the jury that State's witnesses Charles Pee, Jr., and Rohnie Johnson were accomplice witnesses as a matter of law, or alternatively, in failing to submit the issue to the jury. The Court of Appeals simply ruled that Pee and Johnson were not accomplices, and affirmed appellant's conviction. *Marlo v. State*, 681 S.W.2d 82 (Tex.App.—Houston [14th] 1984). In order to support a conviction, accomplice witness testimony must be corroborated by other evidence "tending to connect the defendant with the offence committed." Art. 38.14, V.A.C.C.P. We granted appellant's petition for discretionary review to examine the court of appeals' apparent holding that the evidence supports neither an instruction that Pee and Johnson were accomplices as a matter of law, nor one submitting that issue to the jury for its determination.

■ It was not shown that Pee and Johnson were accomplices as a matter of law by virtue of having been coindictees for the offense for which appellant was being tried.[1] *McCloud v. State*, 527 S.W.2d 885 (Tex.Cr.App.1975). It is only

when the evidence clearly shows that the witness is an accomplice as a matter of law that the trial court must so instruct the jury. *Arney v. State*, 580 S.W.2d 836 (Tex. Cr.App.1979). Based upon the evidence, set out *post*, we agree with the conclusion of the court of appeals that it was not established that witnesses Pee and Johnson were accomplices as a matter of law, and the trial court did not err in refusing to instruct the jury that they were. We turn now to the question whether the evidence raised a fact issue which properly should have been submitted to the jury to decide.

Unless otherwise indicated, the following account is taken from Pee's testimony.[2] Pee and Johnson rented a trailer from appellant, located behind appellant's house in Bay City. Appellant and Pee were coworkers at an oil well service company. Johnson had recently moved down from Ohio to seek employment. On Christmas Day, 1981, the three men left Bay City in appellant's truck and drove to Galveston. There they made several stops before alighting at a bar called Kon Tiki sometime around eight to nine o'clock, p.m. All three men had been drinking since the time they left Bay City. In the bar they met three women, La Nora McGehee, her cousin, Carolyn Cranford and the deceased, Jamie Price, also known as "Smokey," who joined them at their table.

During the course of the evening Johnson became intoxicated, and asked Pee to take him out to appellant's truck. A short time later Pee himself joined Johnson in the truck to wait for appellant. When appellant returned to the truck he had Price with him. He explained that Price "needed a ride home; that she lived in Old Ocean which was on the way to Bay City."[3] Price appeared to Pee to be "pret-

---

1. E.A. Truitt, an investigator with the Brazoria County Sheriff's Department, testified that Pee had been nobilled and Johnson "passed" by the Brazoria County Grand Jury.

2. Except for some discrepancies in the chronology of events following the murder itself, the testimony of Johnson was substantially the same as Pee's.

3. According to witness McGehee, sometime during the evening Price and Cranford, who were homosexuals and had previously lived together, had engaged in an argument. Price left the Kon Tiki between 11:30 and midnight under escort of the appellant, presumably to be taken back to her car, which had been left at McGehee's fa-

ty drunk," and along the way she began to boast:

"Q: What was she saying?

A: She was saying that her girl—I can't remember. You want her exact words?

Q: If you remember them, sir.

A: She said she had five of the best looking women in the world, and that—let's see—I believe, ten bad mother fuckers in the world and nine of them sent her Christmas cards.

Q: Did she act more like a man or a woman?

A: She acted more like a man.

Q: Did she appear to be tough?

A: Yes, sir, she did appear to be tough.

Q: Did she brag about her fighting ability?

A: Yes, sir. She said that she was a blackbelt in Karate."

Subsequently Price passed out. Johnson then indicated a desire to "make out" with her,[4] and it was decided that they would go to a well site known to appellant and Pee through their work for the purpose of carrying out this intent. On the road leading to the well site Pee told Johnson that "if [Price] was a blackbelt in Karate, she might just kick his ass." Appellant asserted that if Price gave them any trouble, "that he had Little Joe with him." "Little Joe" was revealed to be a small nickel plated .22 caliber pistol.

At the well site appellant and Pee got out of the truck and Johnson began to unbutton Price's blouse. Price roused and jumped out of the driver's side of the truck, approaching appellant, who stood with Pee at the front. Demanding to know where she was, Price complained that she had taken appellant to be "a man of his word." Meanwhile Johnson exited the passenger side, came to the front and explained that "all he wanted was a piece of ass."[5] Price

responded, "You will have to kill me first." Without a word appellant pulled out the .22 pistol and shot Price twice in the head, exclaiming thereafter, "There's a bad motherfucker," and then, "There's only three bad mother fuckers in the world and two of them send me Christmas cards." When Price stirred, appellant kicked her and shot her three more times. Pee stated he was "shocked" by this turn of events, testifying that it was "pretty far from [his] mind." Johnson testified that he was "surprised." Neither man moved until appellant ordered them to remove Price's jewelry. Each asserted he was afraid of appellant.

The three men stripped Price of her jewelry, appellant for some unexplained reason removed her blouse, and the body was loaded into the bed of the truck. Pee testified he cooperated from fear appellant might kill him otherwise. The body was dumped into a nearby creek, where it was found January 2, 1982. After thus disposing of the body, the three stopped at a carwash to wash blood from the bed of the truck, went into a convenience store to get some coffee, and stopped on a bridge to throw Price's jewelry over the edge. During all this appellant threatened both Pee and Johnson, and instructed Pee to tell anyone who asked that Price had never gotten into his truck after leaving the Kon Tiki. Between 2:30 and 3:00 a.m. they arrived back at appellant's house in Bay City. Appellant's wife testified they then came into the house, turned the television on loud, and talked; Pee and Johnson maintained they never went in the house, but went straight to their trailer.

Johnson subsequently fled to Ohio. When initially questioned by police, Pee related the story he testified appellant told him to tell.

---

ther's trailer in Old Ocean. From thence Price intended to return to her home in Corsicana.

4. Johnson testified, "I thought maybe me and the girl would make love," and that along the way he had been "feeling her."

5. Johnson testified that when he got out of the truck he stepped to the back to relieve himself, and from there saw the flash of the gun.

At the conclusion of the evidence appellant submitted written requested instructions which defined criminal responsibility under the terms of V.T.C.A. Penal Code, Section 7.02 (a)(2),[6] and would have required the jury to determine whether witnesses Pee and Johnson were parties, and hence accomplices under this definition, and if so, would require that each be corroborated by evidence "tending to connect the defendant with the commission of the offense charged" to support a conviction. See P. McClung, Jury Charges For Texas Criminal Practice (1985 ed.) at pp. 255–56. The trial court refused to give these instructions to the jury.

The court of appeals found the record devoid of evidence that Pee and Johnson had any foreknowledge of the murder, and concluded therefrom that "[w]ithout a common understanding, or proof of criminal intent," neither Pee nor Johnson could be considered an accomplice witness. We believe the court of appeals has construed the record too narrowly.

It is true that we have held that the mere fact that a witness was present when an offense was committed does not compel the conclusion the witness is an accomplice witness to that offense. *Brooks v. State*, 686 S.W.2d 952 (Tex.Cr.App.1985); *Arney v. State*, supra. Further, a witness is not deemed an accomplice witness because he knew of the offense but failed to disclose it or even concealed it; this was true even

before the 1974 Penal Code removed accessories from the law of parties. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976). Nonetheless, in determining whether a person was a participant in an offense we may look to events before, during, and after commission of the offense, including actions which show an understanding and common design to do a certain act. *Alexander v. State*, 607 S.W.2d 551 (Tex.Cr. App.1980). Both presence of a witness at the scene of the offense, and facts which tend to show the witness was an accessory to the offense, or at least that he failed to disclose or actively concealed it, are circumstances which, though each standing alone would not establish the witness as an accomplice, in combination with other facts may suffice to show the witness was a participant. *Harris v. State*, 645 S.W.2d 447 (Tex.Cr.App.1983). Flight may also be factored into this determination. *Id.*

█ By their own testimony Pee and Johnson established their presence at the scene of the killing. It is clear that a common understanding existed among appellant and these two that *some* offense would be committed, and that use of deadly force was contemplated, however jokingly, to effectuate that end; indeed several offenses were committed or were being committed by all three in concert by the time the offense alleged in the indictment occurred.[7] Both witnesses participated in

**6.** Section 7.02 (a)(2) reads:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense ..."

**7.** In a supplemental brief on petition for discretionary review appellant argued for the first time that the evidence raised the issue of whether Pee and Johnson were accomplice witnesses under the definition of criminal responsibility set out in V.T.C.A. Penal Code, Section 7.02 *(b)*, which reads:

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all

conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

Though we find appellant's argument persuasive, we note that this theory was not expressly presented to the trial court by way of requested instruction (a written objection to the court's charge assailed merely the "failure of the court to submit charge of accomplice in that there is [sic] accomplice witnesses in the testimony presented by the State ..."), nor raised as a ground of error and decided by the court of appeals. In the absence of an assertion that this failure to instruct the jury in accordance with Penal Code Section 7.02 (b) constituted fundamental error, see *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), we will not address such a contention for the first time by way of petition

disposal of the body and its effects, and Pee personally washed out the bed of the truck afterwards. There is some indication the three might have conferred upon arriving back at appellant's house in Bay City, though as noted *ante*, this was contested. Johnson fled the jurisdiction. Pee initially lied to investigators, telling a story which, if true, would have exculpated all of them.

Still the court of appeals held the witnesses could not have been accomplices, apparently for two reasons. First, both Pee and Johnson testified to the effect that they never anticipated a killing. Second, both indicated that they assisted in covering up for the murder out of fear of appellant. However, while these assertions do suffice to remove Pee and Johnson from the realm of accomplices as a matter of *law*, they are nevertheless properly the subject of a jury evaluation for credibility. Though uncontested, those assertions could very well have been discounted under the circumstances presented in this case. As in *Harris v. State*, supra, the jury here "was presented with [witnesses] whose testimony formed virtually the State's entire case against appellant, *McCloud v. State*, supra, and ... who had every reason to shade [their] testimony to downplay [their]

own involvement in that offense." *Id.*, at 457. Compare *Alexander v. State*, supra.

In *Easter v. State*, supra, at 226, it was observed:

"It has been held that the conclusion that a witness' testimony is not that of an accomplice witness is not compelled by the witness' statement that he was without knowledge or that he was forced or coerced. *Cozine v. State*, 87 Tex.Cr.R. 92, 220 S.W. 102 (1920); *Rivas v. State*, 98 Tex.Cr.R. 316, 265 S.W. 583 (1924). And in *Freeman v. State*, 11 Tex.App. 92 (1881), it was held that if a State's witness implicates himself, his statement that his participation was compulsory raises the issue of fact as to whether his testimony is or is not that of an accomplice witness." [8]

This rule has been applied regardless of whether the witness "implicated" himself as a "principal," an "accomplice" as that term is presently understood under Penal Code, Section 7.02, supra, or as an "accessory" before the 1974 Penal Code, as construed in *Easter*, removed accessories from the category of accomplices who must be corroborated under Art. 38.14, supra. See also *Drummond v. State*, 624 S.W.2d 690 (Tex.App.—Beaumont 1981); *Emmett v.*

---

for discretionary review. See *Lambrecht v. State*, 681 S.W.2d 614 (Tex.Cr.App.1984).

**8.** *Freeman* relied on *Davis v. State*, 2 Tex.App. 588 (1877). In *Davis* one W.J. Miller testified that a peddler who had been invited to spend the night at the home of his mother in law, the defendant, had been murdered with an ax in the night by defendant's sons, at her instigation, in order that they might rob him. Miller testified that he had witnessed the killing and that afterwards the sons had forced him on threat of death to participate in burial of the body, and then kept him captive for some days afterwards despite Miller's promises not to alert the authorities. There was evidence that Miller had harbored some malice toward his inlaws, and though a grave was found and the stench of human decay detected therein, no body was ever recovered. The Court of Appeals opined:

"It is conceded that if the principal state's witness, W.J. Miller, is to be fully credited, a most atrocious murder was committed at the house of the accused on the night of January 10, 1876, and that the accused was there present, aiding by words and gestures those

engaged in the perpetration of a most horrid crime, and with a full knowledge and understanding of their wicked intention.

But, withdrawing the mind from the contemplation of the heinousness of the offense, and looking at the whole case and the evidence of the other witnesses, the question forces itself upon us, Was not this state's witness also a guilty participant in the commission of the crime?

This witness attempts to exculpate himself by saying that he was compelled, by threats against his own life, to take the part he did. Aside from this, there is as much evidence against him as there is against the accused herself. At any rate, the evidence, taken as a whole, was of such a character as to have required of the presiding judge a proper instruction to the jury on the subject of accomplices, and the weight to be given by the jury to the evidence of an accomplice, as an important part of the law applicable to the case as made by the evidence. The failure of the judge so to charge was a material error, necessarily to the prejudice of the accused." *Id.*, at 603.

*State*, 654 S.W.2d 48 (Tex.App.—Dallas 1983).[9]

█ Under the circumstances presented in this case we decline to hold that the assertions of Pee and Johnson that they were "surprised" by the shooting, and were compelled to undertake disposal of the body and coverup of the incident out of fear of appellant, are dispositive of the question whether they were accomplice witnesses. Whether there existed "a common understanding, or proof of criminal intent" on the parts of Pee and Johnson to commit murder, *Marlo v. State*, supra at 83, was properly an issue for resolution by the jury, and the trial court erred in not submitting that issue accordingly, as was timely requested.

The judgment of the court of appeals is reversed, and the cause is remanded for a new trial.

ONION, Presiding Judge, dissenting.

A jury convicted appellant of murder and assessed his punishment at 60 years' imprisonment.

In two of his grounds of error on appeal the appellant urged the trial court erred in failing to instruct the jury that State's witnesses, Charles Pee, Jr., and Rohnie Johnson, were accomplice witnesses as a matter of law, and alternatively, in failing to submit to the jury as fact issues whether Pee and Johnson were accomplice witnesses. See Article 38.14, V.A.C.C.P. The Court of Appeals concluded that Pee and Johnson were not accomplice witnesses. The conviction was affirmed. *Marlo v. State*, 681 S.W.2d 82, 83 (Tex.App.—Houston [14th] 1984). We granted appellant's

petition for discretionary review to determine the correctness of the holding of the Court of Appeals as to the question of accomplice witnesses.

The evidence reveals that Charles Pee, Jr., age 20, and Rohnie Johnson, age 36, lived in a trailer in appellant's yard, which they rented from appellant, age 41. Pee and appellant worked for an oil well service company. On December 25, 1981, Pee, Johnson and appellant drove from Bay City to Galveston in appellant's pickup truck. En route they stopped at a bar to drink beer and shoot pool. Upon arriving in Galveston, the three went to a bar for another drink and then to a restaurant. Between 8 and 9 p.m. they arrived at the Kon Tiki lounge. There the men encountered three women, La Nora McGehee, her cousin, Carolyn Cranford and the deceased, Jamie "Smokey" Price. According to McGehee, Cranford and Price were homosexuals and had once lived together. Cranford came to Brazoria County and on Christmas Eve Price had come from Corsicana to see her. McGehee revealed that the Kon Tiki was a bar which was frequented by homosexuals.[1] The three men and three women drank and socialized for about three hours or so.

Pee testified that late in the evening Johnson became intoxicated. Pee helped him to the pickup because Johnson couldn't locate the truck. Pee returned to the Kon Tiki, but soon joined Johnson in the truck. About 10 minutes later appellant came to the truck with the deceased Price. He said they were going to take Price to her car in Old Ocean which was on the way to Bay City.[2] All four were in the front seat. Pee

**9.** A somewhat similar rule has been stated thusly,

"that, where one who has taken part in the commission of an offense, endeavors by his own testimony to show his innocent intent, his relation to the crime becomes a question of fact, and the jury must be called upon to determine whether or not he is an accomplice witness. However, when the innocent intent is shown without controversy by witnesses other than the supposed accomplice, an exception to the rule obtains. *Pauly v. State*, 93

Tex.Cr.R. 183, 246 S.W. 375; *Benavides v. State*, 123 Tex.Cr.R. 583, 60 S.W.2d 436."
*King v. State*, 135 Tex.Cr.R. 513, 515–16, 121 S.W.2d 338, 339 (1938).

**1.** Whether this fact was known to Pee, Johnson or appellant is not shown by the record.

**2.** McGehee related that before the deceased left the Kon Tiki with the appellant, she (the deceased) and Cranford had an argument, and the deceased stated she was going to get her car at the home of McGehee in Old Ocean and return to Corsicana that night.

described Price as "pretty drunk." He recalled she mentioned "her girl" and stated that she had five of the best looking women in the world, that there were "ten bad mother fuckers in the world and nine of them sent her a Christmas card." To Pee she appeared tough, acted more like a man than a woman. She told the men she had a black belt in karate. Thereafter she passed out. Johnson soon indicated he wanted to "make love" to Price. As they drove along, Pee told Johnson that Price "might just kick his ass," and appellant responded "that if she gave them any trouble that he had little Joe with him," referring to his .22 caliber pistol.

Later appellant turned off at Old Ocean and drove to the site of Well 121, where he and Pee had worked for an oil well service company. At the well site appellant and Pee got out of the pickup. Johnson proceeded to unbutton Price's blouse. Price aroused and jumped out of the truck. Price shouted at appellant and asked where she was. Johnson stated all he wanted was a "piece of ass." Price responded, "You will have to kill me first." At this point appellant drew his pistol and shot Price twice in the head saying, "There's a bad mother fucker for you" and "There's only three bad mother fuckers in the world and two of them send me Christmas cards." Pee testified Price was still alive when she hit the ground, that appellant kicked and shot her three more times.

Pee stated what happened was totally unexpected and he was scared, that appellant told him the same thing could happen to him. Appellant then ordered Pee and Johnson to take the jewelry off the body and load it in the bed of the truck. Pee complied because he was afraid he would be shot. The body was taken to a nearby bridge where it was dumped in a creek. They drove to Bay City where appellant made Pee and Johnson wash the blood out of the back of the truck at a car wash. Still fearful of being killed, Pee and Johnson were told to throw the jewelry off a bridge near the car wash. Pee stated appellant told them to lie to the police if asked, to say that the deceased left the bar with him but got "mad" and left before getting into the truck.

Pee stated he lied per appellant's instructions when first questioned by police, but later revealed what had happened. He denied he took an active part in the murder and later helped conceal evidence solely out of fear for his own life.

As noted by the Court of Appeals, Johnson's testimony collaborated Pee's testimony in all important respects.[3] Johnson, who was intoxicated, stated that the firing of the shots began to sober him up, that he was afraid of appellant, who made threats to him and Pee, and that he did what appellant told him because he was afraid.

Price's body was found in the creek on January 2, 1982, by a man and his grandsons on an outing. The autopsy reflected the cause of death was three gunshot wounds to the head. The neck wound would not have been fatal. The blood alcohol level in the body was 0.198 percent, while the alcoholic content of the clot from the brain was 0.250 percent.

At the conclusion of the trial appellant objected to the court's charge "failure of the court to submit charge of accomplice in that there is (sic) accomplice witnesses in the testimony presented by the State." The objection did not identify the witnesses. At the same time a special requested charge was filed asking that the court submit as fact issues to the jury whether Pee and Johnson were accomplice witnesses. Neither objection nor requested charge maintained that Pee and Johnson were accomplice witnesses as a matter of law which is not urged on appeal. The objec-

---

**3.** There were some minor inconsistencies in their testimony. They did not agree as to the times when Johnson was unconscious from drinking. The order of events after the shooting were recalled differently. Pee stated they went to the car wash, then to a Seven-Eleven store for coffee, and then Johnson threw the jewelry off a bridge. Johnson recalled that Pee threw the jewelry off the bridge into the river as instructed by appellant, that they then got coffee, and then went to the car wash. Both admitted they had been drinking heavily all day.

tion was overruled and the requested charge denied.

A conviction cannot be had upon the testimony of an accomplice witness unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense. Article 38.-14, V.A.C.C.P.

It has been said before and after the adoption of the 1974 Penal Code that an accomplice witness is someone who participated with another before, during or after the commission of a crime. *Brooks v. State*, 686 S.W.2d 952, 957 (Tex.Cr.App. 1985); *Harris v. State*, 645 S.W.2d 447 (Tex.Cr.App.1983); *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980), and cases there cited; *Easter v. State*, 536 S.W.2d 223, 226 (Tex.Cr.App.1976); *Singletary v. State*, 509 S.W.2d 572 (Tex.Cr.App. 1974). One is not an accomplice witness, however, who cannot be prosecuted for the offense with which the accused is charged. *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App.1979); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978); *Russell v. State*, supra; *Brooks v. State*, supra. If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses. *Easter v. State*, 536 S.W.2d 223, 225 (Tex.Cr.App.1976), and cases there cited; *Brooks v. State*, supra.

In *Easter v. State*, supra, it was observed that the 1974 Penal Code had made some notable changes with regard to parties to a crime, and that an accessory (to the person) after the fact[4] had been eliminated as a party to a crime and replaced with a separate and distinct crime of "hindering apprehension or prosecution." See V.T.C.A., Penal Code, § 38.05. While an accessory was an accomplice witness under the former code, this is no longer true.

*Easter v. State*, supra; *Emmett v. State*, 654 S.W.2d 48, 49 (Tex.App.—Dallas 1983).

The mere fact that a witness was present when the crime was committed does not compel the conclusion the witness is an accomplice witness. *Brooks v. State*, supra; *Brown v. State*, 640 S.W.2d 275 (Tex. Cr.App.1982); *Arney v. State*, 580 S.W.2d 836 (Tex.Cr.App.1979); *Easter v. State*, supra, at p. 225. Further, a witness is not deemed an accomplice witness because he knew of the crime but failed to disclose it or even concealed it. *Easter v. State*, supra, at p. 225; *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979). See also *Villarreal v. State*, supra; *Russell v. State*, supra.

The evidence in a case determines what jury instruction needs to be given on an accomplice witness. When the evidence clearly shows the witness is an accomplice witness as a matter of law, the trial court must so instruct the jury. *Harris v. State*, supra, at p. 454; *Arnay v. State*, supra, at p. 836; *Allen v. State*, 461 S.W.2d 622 (Tex.Cr.App.1970). When there is a question from the evidence whether a witness is an accomplice witness, it is then proper to submit that fact issue to the jury, and this is sufficient even though the evidence appears to preponderate in favor of the conclusion that the witness is an accomplice witness as a matter of law. *Harris v. State*, supra, at p. 454; *Brown v. State*, 640 S.W.2d 275 (Tex.Cr.App.1982); *May v. State*, supra; *Colunga v. State*, 527 S.W.2d 285 (Tex.Cr.App.1975); *Gonzales v. State*, 441 S.W.2d 539 (Tex.Cr.App.1969), and cases there cited. If the evidence is clear that the witness is not an accomplice witness, no charge need be given to the jury either that the witness is an accomplice witness as a matter of law or in the form of a fact issue whether the witness is an accomplice witness. *Villarreal v. State*, supra, at p. 51; *Harris v. State*, supra, at p. 456.

In the instant case there is no evidence that either Pee or Johnson knew of appel-

---

**4.** Article 77, V.A.P.C., 1925, provided in part: "An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence...."

lant's intention to murder Jamie Price. As the Court of Appeals pointed out, "Pee knew appellant had a pistol, but there is no evidence in the record he had knowledge a murder was planned." *Marlo v. State*, supra, at p. 83.[5] Pee and Johnson were shocked and surprised by the shooting. There was no showing that Pee or Johnson participated in the planning or assisted or encouraged the murder. Their mere presence at the scene does not compel the conclusion they were accomplice witnesses. *Villarreal v. State*, supra; *Arney v. State*, supra. *After the fact* they took the jewelry off the body and helped to dispose of the body and jewelry at appellant's instructions because of his threats and in fear of their lives. Cf. *Easter v. State*, supra. Pee did lie at first to the police in accordance with appellant's instructions, but as we have seen, the failure to disclose a crime or even conceal it does not alone an accomplice witness make. *Russell v. State*, supra; *Carrillo v. State*, supra. The testimony of Pee and Johnson was undisputed and unchallenged. Neither were indicted for the murder. I would not conclude that the trial court erred in refusing to submit to the jury fact issues as to whether Pee and Johnson were accomplice witnesses as requested by the appellant. *Russell v. State*, supra. The evidence did not call for such submission, nor did it show they were accomplice witnesses as a matter of law.

The majority states: "It is clear that a *common understanding* existed among appellant and these two men that *some offense* would be committed, and that use of deadly force was contemplated, however, jokingly, to effectuate that end; ..."

I do not read the evidence to show such common understanding among the three who had been heavily drinking.

I would affirm the judgment of the Court of Appeals. I dissent.

TOM G. DAVIS, W.C. DAVIS and WHITE, JJ., join this opinion.

5. Appellant may not have long planned the murder. He left a telephone number through which he could be reached with La Nora McGehee at

the Kon Tiki Bar. It was through this number the police were able to locate appellant.