**Michael T. HERRICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00268–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 20, 1992.

William D. Burdett, Hearne, for appellant.

James M. Kuboviak, Michele Esparza, Asst. Atty., Bryan, for appellee.

Before DUGGAN, O'CONNOR and DUNN, JJ.

OPINION

DUNN, Justice.

A jury convicted appellant; Michael Thomas Herrick, of theft of property valued at between $200–$750, and assessed punishment at 90–days confinement, which was probated for one year.

On May 1, 1990, Joe Davis, a maintenance supervisor at Texas A & M University (TAMU), reported to the police that an air conditioner compressor had been stolen from the Riverside campus of TAMU sometime between April 27, 1990, and April 30, 1990. Davis told Detective Bill Wade that he believed the compressor was probably in the possession of Joseph Gelber, because Gelber had been asking air conditioner mechanics employed by TAMU to locate a used compressor for use at Gelber's house. Detective Wade found the compressor at Gelber's home on May 3, 1990. Gelber told Detective Wade that he received the compressor from appellant. Appellant was later arrested and charged with theft.

In his sole point of error, appellant contends the trial court committed reversible error in failing to give a timely requested charge and instruction to the jury on accomplice testimony, which closely tracked TEX.CODE CRIM.P.ANN. art. 38.14 (Vernon 1979).

Article 38.14 of the Texas Code of Criminal Procedure provides:

A conviction cannot be had upon the testimony of an accomplice unless corrobo-

rated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

■ "If the evidence clearly shows that a witness is an accomplice witness as a matter of law, the trial court must so instruct the jury." *Harris v. State,* 738 S.W.2d 207, 216 (Tex.Crim.App.1986). When there is a conflict in the evidence or a question about whether a person is an accomplice witness, the trial court should submit the question as a fact issue to the jury. *Id.* However, if the evidence is clear that a witness is not an accomplice witness, the court is not required to give the jury a charge concerning accomplice witness testimony. *Id.*

■ The fact that a witness was present at the commission of an offense does not "compel the conclusion the witness is an accomplice witness to that offense." *Marlo v. State,* 720 S.W.2d 496, 499 (Tex.Crim.App.1986). A person will not be considered an accomplice witness simply because he or she knew of the offense but failed to disclose it or concealed it. *Id.* To determine whether a person was an accomplice, we may look to events before, after, and during the commission of the crime, including actions that show an understanding and common design to do a certain act. *Id.*

Because we must examine the record to determine whether the trial court should have instructed the jury that Gelber was an accomplice as a matter of law, and to determine whether the trial court should have submitted the issue of accomplice witness as a fact question to the jury, we will summarize the evidence as it was presented at trial.

Davis testified that he told appellant to install a certain compressor. Around April 13, 1990, he saw the compressor at the motor pool. Later, Davis asked appellant if he had installed the compressor, and appellant answered, "yes." Davis then checked at the motor pool and discovered that the compressor was still there. That same day Davis called Detective Wade and told him he thought appellant was trying to steal the compressor. Davis' superior told him to leave the compressor at the motor pool. The next Monday morning Davis saw the compressor in the air conditioning shop. The following Wednesday, appellant asked Davis if he wanted to put the compressor in a more secure place because he had fixed the old compressor. Davis told appellant to leave the compressor where it was because there might be a need for it at another location in the future. On Monday, April 30, 1990, the assistant maintenance supervisor told Davis the compressor was missing. Davis then called Detective Wade.

Detective Wade found the missing compressor in the bed of Gelber's truck on May 3, 1990. Gelber testified that he gave appellant $150 for a used compressor; he gave appellant $75 around the first of March, and around the first of April, gave Holubec, a co-worker of appellant, $75 to give appellant. Gelber testified that on May 1, 1990, appellant called him at St. Joseph's Hospital, where Gelber was visiting his grandmother. Appellant gave Gelber directions to appellant's house, and told Gelber he would find the compressor in the back of a blue-gray Honda Civic, which had no license plates. Gelber testified that he did as appellant instructed and picked up the compressor from the Honda with no license plates around 4:30 a.m. on the morning of May 2, 1990. Gelber then drove to his job at TAMU and arrived there around 7:30 a.m. Gelber returned to his house around 12:30 p.m. on May 2, 1990. Soon after arriving at his home, Gelber opened the box the compressor was in and noticed that the compressor was new. Gelber testified that he intended to call appellant to find out if he owed appellant more money for obtaining a new as opposed to a used compressor. On May 3, 1990, Detective Wade went to Gelber's house and noticed the compressor, still in the box, in the bed of Gelber's truck. Wade testified that the back of the truck was facing the road, the truck was parked in front of Gelber's house, and the compressor box was not

covered. Gelber testified that he did not have a key to the air conditioning shop.

Wade testified that Gelber appeared dismayed when told that the compressor was stolen. Gelber told Wade that he figured the compressor was stolen because it was a new compressor. Detective Wade testified that he never believed Gelber stole the compressor, and other than what Gelber told him, there was no other evidence to link Gelber or appellant to the compressor. Wade further testified that Gelber was truthful and all that Gelber told him checked out to be correct.

Robert Holubec testified that Gelber had asked both he and appellant to look for a used compressor. Holubec testified that around the first of April, Gelber gave him $75 to install a compressor. Gelber told Holubec that Gelber could get a compressor if Holubec would install it for him. Holubec testified that normally, after picking up an air conditioning part from the electrical shop, he and appellant would take the part to the job site. If they did not use the part on the job site, they would put the part in the motor pool instead of the air conditioning shop because they could drive into the motor pool and unload the part, whereas they could not drive into the air conditioning shop to unload parts. Holubec testified that the compressor was in the air conditioning shop when he locked up the shop around 4:15 p.m. on Friday, April 27, 1990.

Appellant testified that he never called Gelber. He also testified that Gelber gave him $75, but that Holubec did not give him $75. Appellant testified that the gray-blue Honda Civic was not running at the time the compressor was allegedly stolen. He testified that the gray-blue Honda had been broken into on the night of May 1, 1990.

Reviewing the record, we hold that the evidence does not clearly show that Gelber was an accomplice as a matter of law. *Marlo*, 720 S.W.2d at 497, 500; *Harris*, 738 S.W.2d at 217. We must now determine if the trial court erred in not submitting the issue of accomplice witness as a fact question to the jury, by determining if there was a conflict in the evidence or a question about whether Gelber was an accomplice witness.

The court in both *Marlo* and *Harris* held there were questions or conflicts in the evidence about whether the witnesses were accomplices or not, requiring the trial court to submit a fact issue and instruction to the jury regarding accomplice witnesses. *Harris*, 738 S.W.2d at 217; *Marlo*, 720 S.W.2d at 501. However, these cases are distinguishable from the case at bar.

In *Marlo*, the appellant was convicted for the offense of murder. 720 S.W.2d at 497. The alleged accomplice witnesses' own testimony established that they were present at the scene of the murder. *Id.* at 499. There existed a common understanding among the appellant and the witnesses that some offense would be committed and that deadly force was contemplated. *Id.* Both witnesses helped the appellant dispose of the deceased's body, and one of the witnesses washed out the bed of the truck where the victim had bled. *Id.* at 500. One of the witnesses fled from the jurisdiction. *Id.* The other witness initially lied to investigators of the crime. *Id.* The court held that although the witnesses testified that they never anticipated a killing, and testified that they covered up the murder out of fear of the appellant, the jury could have disbelieved the witnesses' testimony. *Id.* Therefore, the court held that the trial court should have submitted to the jury the issue of whether the witnesses were accomplices because there was a conflict in the evidence and a question regarding whether the witnesses were accomplices. *Id.* at 501.

In *Harris*, the appellant was convicted of murder. 738 S.W.2d at 210. The evidence established that the alleged accomplice witness was present at the scene of the murder and had blood on her clothing after the offense took place. *Id.* at 216. However, there was a conflict in the evidence about whether the witness participated in planning or promoting the offense. *Id.* There was also a conflict in the evidence regarding how the blood got on the witness's clothes; the witness said the appellant sat next to her after killing the victim and got

the blood on her clothes, but the appellant claimed the witness assisted in the killing. *Id.* at 216–17. There was another conflict regarding the reason the witness got in the victim's truck and left the scene of the offense with the appellant; the witness testified that she left the scene of the offense because she feared for her life, while the appellant claimed the witness was the first person to get in the victim's truck. *Id.* at 217. The court held that the trial court did not err in submitting the issue of accomplice witness as a fact question to the jury, instead of charging the jury that the alleged accomplice witness was an accomplice as a matter of law. *Id.*

In this case, there was no evidence presented to show that Gelber had a key to the air conditioning shop, which was where everyone last saw the compressor, or that Gelber was around the air conditioning shop the weekend the compressor was allegedly stolen. There was no evidence that Gelber knew the compressor was stolen before examining the compressor box. There was no testimony that Gelber was looking for a stolen compressor, or that he was looking for a new compressor. Gelber was not charged with any offense. There was no evidence that Gelber planned or plotted with appellant to steal the compressor or that there was a common plan or design between Gelber and appellant to steal the compressor. Detective Wade testified that Gelber's statements to him always checked out to be correct. The fact that Gelber did not report that the compressor might have been stolen to the police does not lead to the conclusion that he was an accomplice. *Marlo,* 720 S.W.2d at 499. The fact Gelber was found in possession of the stolen compressor does not lead to the conclusion that he was an accomplice in the theft of the compressor.

There was no conflict in the evidence or question about whether Gelber was an accomplice. Therefore, we hold the evidence is clear that Gelber was not an accomplice witness; and therefore, the trial court did not commit error in refusing to submit a charge or instruction on accomplice testimony.

Appellant's sole point of error is overruled.

The judgment is affirmed.