IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-512-CR





DANIEL NAVARRO,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT



NO. 7449, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING



 




 Over a plea of not guilty, the jury found Daniel Navarro guilty of murder. Tex.
Penal Code Ann. § 19.02(a)(1) (West 1989). The jury assessed punishment at ninety-nine years
imprisonment. Navarro appeals from a judgment that convicts and sentences him accordingly. 
We will affirm.

 On or about August 15, 1988, appellant shot and killed Cynthia Harper. Appellant
and Harper had been living together for at least a year prior to the shooting. During this time,
appellant supported himself by manufacturing methamphetamine at clandestine laboratories in
rural Bastrop County. Both appellant and Harper were heavy users of methamphetamine.

 Appellant's relationship with Harper was a stormy one. Appellant was jealous of
Harper and often accused her of seeing other men. Appellant also suspected that Harper was
stealing money and drugs from him. The two often argued, and sometimes these arguments
became violent. Two witnesses, Holly Peterson and Donald Shelton, testified to three incidents
at which appellant brandished a handgun in front of Harper and threatened to kill her. Shelton
testified that appellant would often "slap" Harper with the pistol. On at least one occasion,
appellant severely pistol-whipped Harper, leaving her face bloody and bruised. Peterson
described another incident in which appellant beat and choked Harper into unconsciousness. 
Peterson testified that she told Harper she should leave appellant, but Harper told her she was
afraid to do so. Shelton said that he considered Harper to be appellant's prisoner.

 Barbara Bechyne testified that she visited Harper at a mobile home in the Red Rock
area of Bastrop County in the spring of 1988. Appellant and others were making
methamphetamine at that time. Appellant became angry because the two women were walking
through the room where his laboratory was located. Appellant told the man helping him to go
outside and dig two holes. Appellant then seized Harper and Bechyne, took them outside, and
showed them the holes. Appellant told them "that if we ever cross him that this is where we could
find ourselves."

 The fatal shooting occurred several months later in this same Red Rock trailer
house. Marvin Davis testified that he and appellant were "cooking some speed." Appellant and
Harper were arguing in the living room. David walked outside to escape the bickering, but went
back in to get something from the refrigerator. In the living room, Davis saw Harper seated in
a chair with appellant pacing in front of her. Appellant had a pistol in his pocket. Davis turned
his back to reach into the refrigerator when he heard a shot. He turned and saw appellant holding
the pistol. Harper was still seated in the chair, with a bullet hole above her left eye. Davis,
terrified, walked over to appellant, grabbed his arm, and lowered the pistol back into appellant's
pocket. Appellant told him, "I killed her." (1)

 Appellant and Davis placed Harper's body in the trunk of appellant's car and drove
to another location, throwing the pistol out along the way. The men buried Harper near the
mobile homes in which appellant and his brother were living east of Bastrop. Private detectives
hired by Harper's family found the body two years later, in August 1990.

 Appellant advances eleven points of error. We shall consider these contentions in
the order presented. It is noted that appellant does not challenge the sufficiency of the evidence
to sustain his conviction.

 Appellant's first point of error urges that the "trial court erred by giving the jury
a charge which failed to limit the definitions of the terms 'knowingly' and 'intentionally' to the
result of the conduct." Murder under section 19.02(a)(1) is a "result of conduct" offense. Tex.
Penal Code Ann. § 19.02(a)(1) (West 1989); Lugo-Lugo v. State, 650 S.W.2d 72, 80-82 (Tex.
Crim. App. 1983). The abstract or definitional portion of the trial court's charge tracked the full
statutory definitions of "intentionally" and "knowingly" relating to culpable mental states to the
nature of and circumstances surrounding conduct as well as to the result of conduct. Tex. Penal
Code Ann. § 6.03(a), (b) (West 1974). (2) Appellant contends that the trial court erred in overruling
his objection to the failure of the charge to limit the culpable mental states "in a way that involves
the result of the conduct." Alvarado v. State, 704 S.W.2d 36 (Tex. Crim. App. 1985).

 The holding in Alvarado was an effort to lessen the confusion arising from the
legislature's unfortunate choice of words in the statute defining the offense of injury to a child,
as it read at the time of that opinion. Penal Code, 63rd Leg., R.S., ch. 399, sec. 1, § 22.04, 1973
Tex. Gen. Laws 883, 920 (Tex. Penal Code Ann. § 22.04, since amended). Until amended in
1991, section 22.04 provided that it was an offense to intentionally, knowingly, or recklessly
"engage[ ] in conduct that causes" serious injury to a child. Notwithstanding the quoted phrase,
injury to a child was and is a "result of conduct" offense; that is, the State must prove that the
accused intended to cause the injury resulting from his conduct, and the evidence is insufficient
if it shows only that he intended to engage in the conduct without intending the result. Beggs v.
State, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980). In a series of opinions, the Court of
Criminal Appeals held that, upon objection or request by one accused of injury to a child, the trial
court must instruct the jury that the culpable mental states relate to the result of the defendant's
conduct rather than to the conduct itself, either by giving a special instruction (Beggs, 597 S.W.2d
at 378-80; Kelly v. State, 748 S.W.2d 236, 238-39 (Tex. Crim. App. 1988)), or by limiting the
definitions of the culpable mental states to that aspect of each that relates to the result of the
conduct. (Alvarado, 704 S.W.2d at 37, 39). See Morales v. State, 853 S.W.2d 583 (Tex. Crim.
App. 1993); Westfall v. State, 782 S.W.2d 951 (Tex. App.--Austin 1990, pet. ref'd).

 The rule announced in Alvarado has little or no application in a prosecution under
section 19.02 or any other "result of conduct" statute that does not employ the confusing "engage
in conduct" language formerly found in section 22.04. Schumacher v. State, 814 S.W.2d 871,
874 (Tex. App.--Austin 1991, no pet.). But even if the district court erred by refusing to limit the
definitions of "intentional" and "knowingly" to the result of conduct, the error was harmless
despite the objection. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion
on rehearing); Fuller v. State, 819 S.W.2d 254, 257 (Tex. App.--Austin 1991, pet. ref'd). In this
cause, the paragraph in the charge applying the law to the facts limited the definitions of the
culpable mental states by applying them to the factual context. The application paragraph required
the jury to find that appellant "intentionally and knowingly cause[d] the death of . . . Cynthia
Harper, by shooting her with a firearm." No one reading this paragraph would be misled into
believing that appellant should be convicted on a finding that he intentionally and knowingly shot
Harper without intending to kill her or knowing that death was likely to result. When read in
conjunction with the application paragraph, the "nature of conduct" and "circumstances
surrounding conduct" language found in the definitions of the culpable mental states did not
provide for any additional degree of culpability. In the context of this cause, the disputed
definitional language was irrelevant. Kinnamon v. State, 791 S.W.2d 84, 89 (Tex. Crim. App.
1990).

 Appellant argues that the prosecutor, in his jury argument, attempted to exploit this
alleged charge error in order to obtain a conviction:



Paragraph four [of the charge], (3) you are instructed that a person commits an
offense only if he voluntarily engages in conduct, including an act. Okay. Now,
listen to this. Conduct is not rendered involuntary merely because the person did
not intend the result of his conduct. If you were listening to what Mr. Keinarth
[defense counsel] was saying, he was saying, you know, if I point the gun at her
and I didn't mean that she got shot or I shot it and I didn't mean that it would hit
her, that is not a defense. That is not an accident. Conduct is not rendered
involuntary merely because the person did not intend the result. It's that they
intended the act.


 Contrary to appellant's contention now and at trial, this argument correctly stated
the law regarding voluntary and involuntary conduct. Tex. Penal Code Ann. § 6.01(a) (West
Supp. 1993). Joiner v. State, 727 S.W.2d 534, 536-37 (Tex. Crim. App. 1987); see also George
v. State, 681 S.W.2d 43, 47 (Tex. Crim. App. 1984); Gaona v. State, 733 S.W.2d 611, 617
(Tex. App.--Corpus Christi 1988, pet. ref'd). The charge instructed the jury to acquit appellant
if it found or had a reasonable doubt that the shooting of the deceased was the result of the
accidental discharge of the pistol, and not the result of appellant's voluntary conduct. The
prosecutor correctly argued that the shooting was not rendered involuntary merely because
appellant did not intend the result. He did not suggest that the jury could properly convict
appellant of murder if it found that he intended the act but not the result.

 In determining whether any actual harm was suffered by appellant from the error,
if any, in the court's charge, Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. Ap. 1986), the
error should be viewed in light of the entire jury charge, the state of the evidence (including
contested issues and the weight of the probative evidence), the argument of counsel, and any other
relevant information revealed by the record. Almanza, 686 S.W.2d at 171. Having followed this
standard of review, we conclude the error, if any, was harmless. Appellant has not demonstrated
that he suffered harm from the error, if any, in the court's charge. Fuller, 819 S.W.2d at 257. 
The first point of error is overruled.

 Appellant, in his second point of error, contends that the trial court erred in
admitting hearsay statements of the deceased through the testimony of her mother despite timely
objection. During direct examination, Mrs. Barbara Harper testified over a running objection, (4)
that her daughter told her that appellant had "put a gun to her head and threatened to kill her." 
Mrs. Harper revealed that on a subsequent occasion her daughter told her that appellant "didn't
want her [daughter] . . . to have any contact with us and if she continued to he could take care of
us."

 The State argues that the testimony was properly admitted to show the deceased's
state of mind at the time the statements were made in May and June 1988. See Texas R. Crim.
Evid. 803(3). Rule 803(3) creates an exception to the hearsay rule for a "statement of the
declarant's then existing state of mind . . . but not including a statement of memory or belief to
prove the fact remembered or believed." Assuming that the deceased's statements to her mother
reflected fear of appellant, they did so only by inference from the facts stated. The testimony
reflected the deceased's state of mind only if the facts stated were taken as true. Love v. State,
581 S.W.2d 679, 681 (Tex. Crim. App. 1979). The deceased's statements to her mother had no
relevance in this cause except to prove the truth of the matters stated: that appellant had pointed
a gun at her head and made threats against her parents. As such, the statements were merely
statements of memory to prove the fact remembered, and therefore were not admissible under rule
803(3). See 33 Steven Goode, Olin G. Wellborn & M. Michael Sharlot, Guide to the Texas Rules
of Evidence: Civil and Criminal §§ 803.6, 803.7 (Texas Practice 1988 & Supp. 1992).

 Appellant argues that the prosecutor emphasized the error in his argument to the
jury albeit without objection:



 The last witness, the one I want you to consider the most is the one who
testified first, and that was the young girl's mother. She said that Cynthia came
by two or three times a month and that the last time she saw her she said she was
scared. She said that Danny Navarro had put a gun to her head and threatened to
kill her.


 Now, listen, folks, she'd been with her mother two or three times a month
ever since she was a little girl, but . . . the last time that Mrs. Harper saw her was
the first time she ever mentioned that he had threatened to kill her and held a gun
to her head, even though you know from these other witnesses that it happened
before. This relationship had deteriorated to the point where it was headed for
murder long before this time.



 The State argues that if the admission of Mrs. Harper's testimony was error, it was
harmless. Tex. R. App. P. 81(b)(2). When applying the harmless error rule, a reviewing court
should not focus on the propriety of the outcome of the trial, but should be concerned with the
integrity of the process leading to the conviction. Harris v. State, 790 S.W.2d 568, 587 (Tex.
Crim. App. 1989). Among the factors to be considered are: the source of the error; the nature
of the error; whether and to what extent the error was emphasized by the State; the collateral
implications of the error; how much weight a juror would probably place upon the error; and
whether declaring the error harmless would encourage the State to repeat it with impunity. Id.

 Numerous witnesses testified to appellant's violent nature and to the repeated
threats he made against the life of Cynthia Harper, the deceased. The jury heard testimony that
appellant often pointed a handgun at the deceased and sometimes hit her with it; that when she was
missing appellant would search for her, and that when she returned "it was World War III." On
one occasion, appellant choked the deceased into unconsciousness. On another occasion, appellant
showed the deceased a hole in the ground and told her that was where she could find herself if she
"crossed" him. One witness testified that Harper said she was afraid to leave appellant, and
another witness considered Harper to be appellant's prisoner. The truth of this testimony was
undisputed. Evidence established that appellant admitted shooting the deceased and showed that
he buried her in a shallow grave. Under the circumstances, the admission of Mrs. Harper's
hearsay testimony added little to the State's case. See Harris, 790 S.W.2d at 588 (presence of
overwhelming evidence may be considered as a factor in determining whether erroneously
admitting evidence was harmless). Even taking into account the prosecutor's use of Mrs.
Harper's testimony in his argument to the jury, we are satisfied that the error before us was
harmless beyond a reasonable doubt. Tex. R. App. P. 81(b)(2); see also Tex. R. Crim. Evid.
103(a). Point of error two is overruled.

 In his third and fourth points of error, appellant urges that the trial court erred in
limiting his cross-examination of Donald Shelton by which he intended to show Shelton's bias and
motive for testifying for the State. Appellant relies upon his constitutional rights to confrontation
and cross-examination. See Sixth and Fourteenth Amendments, United States Constitution;
Article I, Section 10, Texas Constitution.

 On direct examination, Shelton, age 27, testified that he had come into contact with
appellant and Harper in 1967 "through drugs"; that he came to see appellant to get drugs; and that
he saw appellant once or twice a week until Harper disappeared. Shelton admitted that he used
drugs and was "into . . . manufacturing speed." Shelton related that he had seen appellant beating
Harper on several occasions, and revealed that appellant had once beaten him.

 On cross-examination, appellant established that Shelton was a police informant
who had reported on appellant's drug activities; and that he had been an informant in other cases
in Bastrop County. Appellant complains that, by virtue of the State's objections, he was
prevented by the trial court from eliciting from Shelton the names of the other individuals on
whom he had provided information "in any case in Bastrop County," and whether Shelton had
worked with or cooperated with one Mullins in cases other than those involving appellant's drug
activities.

 Appellant has failed to perfect a bill of exception to show what Shelton's answers
would have been to the questions propounded by appellant's counsel. Tex. R. Crim. Evid.
103(a)(2)(b); Tex. R. App. P. 52(a); Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987);
Koehler v. State, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). Thus, appellant has failed to show
that Shelton's responses to the questions asked would have demonstrated a bias or motive for
Shelton to testify favorably for the State and that the trial court abused its discretion. See Lewis
v. State, 815 S.W.2d 560, 565-66 (Tex. Crim. App. 1991). Absence a bill of exception or offer
of proof, nothing is presented for review. Points of error three and four are overruled. (5)

 In his fifth point of error, appellant contends that the "trial court erred in failing
to grant a limiting instruction on the law of extraneous offenses." Appellant's only objection to
the charge in this regard was that "nowhere therein does the court instruct the jury upon the law
of extraneous offenses and make proper application of such law to the facts and evidence." The
point of error was not preserved for review. A defendant is required to present his objection to
the court's charge "distinctly specifying each ground of objection." Tex. Code Crim. Proc. Ann.
art. 36.14 (West Supp. 1993). As appellant points out in his brief, there were numerous
extraneous offenses admitted into evidence. Appellant's objection, however, did not refer to the
extraneous offenses to which it pertained. Cf. Walker v. State, 440 S.W.2d 653, 660 (Tex. Crim.
App. 1969). Further, the objection did not complain of the failure to limit consideration of the
extraneous offense evidence, the contention appellant now advances on appeal, nor did the
objection specify the purpose for which appellant wanted the evidence limited. Burns v. State,
556 S.W.2d 270, 284 (Tex. Crim. App. 1977)

 Generally, an instruction limiting a jury's consideration of certain evidence is not
required when the evidence is admissible to prove a main fact in the case. Porter v. State, 709
S.W.2d 213, 215 (Tex. Crim. App. 1986); Dillard v. State, 477 S.W.2d 547, 551 (Tex. Crim.
App. 1972); Richardson v. State, 751 S.W.2d 663, 666 (Tex. App.--Houston [1st Dist.] 1988, pet.
ref'd.), cert. denied, 112 S.Ct. 448 (1991). (6) The trial court is not required to give limiting
instructions on an extraneous offense which is part and parcel of and closely interwoven with the
offense for which the accused is on trial. Arinette v. State, 513 S.W.2d 857, 864 (Tex. Crim.
App. 1974); cf. Wilkerson v. State 736 S.W.2d 656, 661 (Tex. Crim. App. 1987) (evidence of
an extraneous offense may be admissible to show the context in which the crime charged
occurred). See also Ramirez v. State, 815 S.W.2d 636, 644 (Tex. Crim. App. 1991). In
addition, when the testimony could only be used for impeachment purposes no limiting charge is
required, nor is a limiting charge required if the testimony could have been admissible for both
impeachment purposes and as direct evidence. Cantrell v. State, 731 S.W.2d 86, 95 (Tex. Crim.
App. 1987). Moreover, when a limiting instruction is given it should be restricted to the narrow
issue for which it was admitted. Cf. Livingston v. State, 739 S.W.2d 311, 332-33 (Tex. Crim.
App. 1987), cert. denied, 487 U.S. 1210 (1988).

 Appellant now lists some of the extraneous offenses evidence which he claims
should have been limited. The listing comes too late. A complaint on appeal must comport with
the trial objection. Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.), cert. denied, 112
S.Ct. 202 (1991). Furthermore, appellant was not entitled to a limiting charge on some of the
extraneous matters or offenses now listed. As to the others, his objections were not specific
enough to preserve error. The fifth point of error is overruled.

 In his sixth point of error appellant contends that the "trial court erred in admitting
extraneous offenses which were not relevant or whose probativeness was substantially outweighed
by the unfair prejudice to appellant." This general multifarious-type point of error appears global
in nature, apparently pertaining to the entire trial. The difficulty is that appellant, for the most
part, does not make reference to the pages in the record where the evidence was offered and
admitted, and where his objections were made with the trial court's rulings thereon. Insofar as
his point of error is inadequately briefed under Rule 74(f) of the Texas Rules of Appellate
Procedure, we will not address it. Castillo v. State, 810 S.W.2d 180, 182 n.1 (Tex. Crim. App.
1990). (7)

 Claiming that "some of the extraneous offense material" was not relevant to section
19.06 of the Penal Code, (8) appellant does refer to the testimony of Donald Shelton as not being
probative of the relationship between appellant and deceased because it showed that appellant
assaulted and threatened Shelton in May or June 1988, prior to the alleged offense on August 15,
1988. Prior to calling Shelton, the prosecutor outlined what he expected Shelton's testimony to
be. At this point, appellant made his "extraneous offense" and "probative value outweighed by
prejudice" objection and obtained the court's permission to release him from the obligation of
repeating the objection in the jury's presence. Shelton testified that he had seen the appellant and
deceased together on approximately thirty occasions over a period of time. Shelton described
assaults and beatings of the deceased by appellant that he had witnessed. On the occasion of
which appellant now complains, Shelton, without further objection, testified that appellant accused
him of looking through a window at the deceased and of stealing drugs from appellant. When
appellant and another man went into a nearby shed, the deceased warned Shelton to leave the
premises. When appellant saw them together, he accused the deceased of stealing the drugs and
giving them to Shelton. Appellant then pistol-whipped Shelton knocking him to the ground and
chased the deceased into a house where he began beating her. After appellant left the house, he
made his threat to Shelton to kill him.

 Appellant's argument that Shelton's testimony was beyond the scope of section
19.06 is without merit. We conclude that Shelton's testimony about appellant's use of a gun, his
threats and violent conduct against the deceased was admissible to show the relevant facts
surrounding the killing and the previous relationship existing between appellant and the deceased
and the relevant facts and circumstance going to show the condition of appellant's mind at the time
of the offense. Reed v. State, 644 S.W.2d 494, 499 (Tex. App.--Corpus Christi 1982, pet. ref'd). 
Appellant argues that the incidents were too remote to be admissible under section 19.06. We do
not agree. As pointed out in Reed, the Court of Criminal Appeals has approved the admission of
evidence describing threats or assaults against the deceased occurring years before the offense. 
Id. at 499; see also McClure v. State, 430 S.W.2d 813, 813 (Tex. Crim. App. 1968); McLemore
v. State, 293 S.W.2d 788, 790 (Tex. Crim. App. 1956). The assault upon and the threat against
Shelton were closely interwoven with an assault upon the deceased by the appellant. Admissible
evidence under section 19.06 is not required to be presented to the jury in a vacuum. If the attack
upon Shelton was improperly admitted, however, we find that it was harmless error beyond a
reasonable doubt. See Tex. R. App. P. 81(b)(2); see also Tex. R. Crim. Evid. 103(a).

 Appellant in his argument also refers to all extraneous matters in point of error
number five and incorporates the same "by reference in this point of error for analysis." Nothing
further is offered. If this be proper briefing, we have examined point of error number five and
find page number references only to the testimony of Shelton (discussed above) and Holly
Peterson. We find no objection to Peterson's testimony nor does appellant in argument make
reference to any objection. And in point of error number five, appellant concedes that some of
the extraneous offenses were relevant under section 19.06 and admissible under Rule 404(b) of
the Texas Rules of Appellate Procedure. We find no merit in point of error number six as
presented and overrule the same.

 In his seventh point of error, appellant contends that the trial court erred in refusing
to submit a fact issue to the jury as to whether Marvin Davis was an accomplice witness despite
appellant's request. Appellant argues that Davis was present at the time of the commission of the
alleged offense, and assisted appellant in concealing the body and disposing of the weapon. 
Further, Davis did not report the offense for over two years, and not then, until he was questioned
by the police.

 A conviction cannot be had upon the testimony of an accomplice witness unless that
testimony is corroborated by other evidence tending to connect the defendant with the offense
committed, and the corroboration is not sufficient if it merely shows the commission of the
offense. Tex. Code Crim. Proc. art. 38.14 (West 1965). An accomplice witness is someone who
participated with another before, during or after the commission of a crime. Kunkle v. State, 771
S.W.2d 435, 439 (Tex. Crim. App. 1986), cert. denied, 492 U.S. 937 (1989). Brooks v. State,
686 S.W.2d 952, 957 (Tex. Crim. App. 1985). One is not an accomplice witness, however, who
cannot be prosecuted for the offense with which the accused is charged. Kunkle, 771 S.W.2d at
439; Carrillo v. State, 591 S.W.2d 876, 882 (Tex. Crim. App. 1979).

 When the evidence clearly shows that a witness is an accomplice witness as a matter
of law, the trial court must so instruct the jury. Harris v. State, 645 S.W.2d 447, 454 (Tex.
Crim. App. 1983). If the witness is not an accomplice witness, no instruction need be given. Id.
at 456. But where there is a conflict in the evidence, a doubt as to the witness' status as an
accomplice witness, the court should then submit to the jury the fact issue of the witness' status
and instruct the jury not to consider the witness' uncorroborated testimony if it finds that the
witness was an accomplice witness. Id.; Carrillo, 591 S.W.2d at 882.

 That a witness was present when the crime was committed does not alone make him
an accomplice witness. Brooks v. State, 686 S.W.2d at 957; Easter v. State, 536 S.W.2d 223,
225 (Tex. Crim. App. 1976). Furthermore, a witness is not deemed an accomplice witness
because he knew of the crime but failed to disclose it or even concealed it. Kunkle, 771 S.W.2d
at 439; Russell v. State, 598 S.W.2d 238, 249 (Tex. Crim. App. 1980). If a State's witness has
no complicity in the offense for which an accused is on trial, his testimony is not that of an
accomplice witness, whatever may have been his complicity with the accused in the commission
of other crimes. Gamez v. State, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); Sheffield v.
State, 847 S.W.2d 251, 258 (Tex. App.--Tyler 1992, pet. ref'd).

 Moreover, the 1974 Penal Code made some notable changes with regard to parties
to a crime. The distinction between a principal and an accomplice (to a crime) was abolished. 
An accessory (after the fact) has also been eliminated as a party to a crime and replaced with
section 38.05 of the Penal Code defining the separate and distinct crime of "hindering
apprehension or prosecution." Tex. Penal Code Ann. § 38.05 (West 1989); Easter, 536 S.W.2d
at 228. While a principal, an accomplice (to the crime) and accessory after the fact (to a person)
were all accomplice witnesses under the former code, an accessory after the fact is no longer an
accomplice witness. Id.; see also Harris v. State, 738 S.W.2d 207, 215 (Tex. Crim. App. 1986);
Sheffield, 847 S.W.2d at 259 n.3.

 In the instant case, Davis was not shown to have assisted or encouraged appellant
or to have participated in Harper's murder. Davis was present. He had just entered the house
and had gone to the refrigerator. His back was turned when he heard the shot. The
uncontradicted evidence shows that Davis had no idea that appellant was contemplating the use
of deadly force against Harper. Davis did help appellant bury the body and dispose of the
weapon. He explained that he was afraid of appellant and the weapon, and that while he knew
of the crime he did not report it because of his complicity in other crimes and his fear of being
involved in a murder investigation. The fact that Davis was present at the time of the offense, that
he failed to disclose the crime, that he was involved in other crimes, and that he might be subject
to prosecution for the separate offense under section 38.05 for his actions after the killing would
not constitute him an accomplice witness or raise any question about his status as such a witness
which would require a charge as requested.

 Appellant relies upon Harris, 645 S.W.2d 447, and Marlo v. State, 720 S.W.2d
496 (Tex. Crim. App. 1986). Both are distinguishable. In Harris, the witness in question gave
conflicting and contradictory testimony regarding her foreknowledge of and involvement in the
murder for which the defendant was on trial. In Marlo, the witnesses testified without
contradiction that they were surprised when the defendant shot the victim, but there was other
evidence from which the jury could have concluded that they had a common understanding with
the defendant that some offense would be committed and that deadly force would be used in its
commission. There is no evidence here that Davis knew in advance that appellant planned to kill
Harper or commit any other offense against her involving the use of deadly force. Marlo may
well be limited to its particular fact situation. Whatever its continued viability, Marlo is not here
controlling. The seventh point of error is overruled.

 In his eighth point of error, appellant complains that the trial court erred in denying
cross-examination of Shelton as to his admissions of criminal conduct "by in effect invoking the
witness' Fifth Amendment privilege which had been waived." During Shelton's cross-examination the following exchange occurred:



Q (By Mr. Keinarth) In your cooperation with law enforcement agencies, have
you admitted to law enforcement officers of your own criminal involvement in the
possession, delivery and production of methamphetamine?


 THE COURT: The Court will advise you that you do not have to answer,
because anything that you might testify in this regard could be used against you in
a court of law. And if you do begin to answer and you wish to stop at any point,
you may do so.


A I don't want to answer that question.


 MR. KEINARTH: Your Honor, just for our record, I think it's a proper
question because if he's admitted that activity to some law enforcement officer,
he's waived any Fifth Amendment right that he may have and he should be
compelled to answer that question here in court today.


 THE COURT: The Court has ruled.


. . . .


Q Q I understand that you didn't answer the question that the Court allowed you
not to answer, but let me ask it of you this way, Mr. Shelton. Have any of those
officers ever arrested you for any drug related offense?


A No.



 Appellant relies only upon Hurtado v. State, 722 S.W.2d 184, 189 (Tex.
App.--Houston [14th Dist.] 1986, pet. ref'd), which held that when the accomplice witness was
asked on cross-examination whether she was also guilty of possession of cocaine with intent to
deliver, the trial court should have waited for the witness to invoke her Fifth Amendment
privilege instead of invoking it for her, but that the error was harmless under the circumstances
there presented.

 In the instant case, appellant made no objection to the trial court's action, see Tex.
R. App. P 52(a), nor did he point out that the witness' response ("I don't want to answer the
question.") was not proper invocation of the privilege against self-incrimination. Moreover,
appellant did not perfect a bill of exception nor make an offer of proof. Thus, nothing was
preserved for review. Green, 840 S.W.2d at 407. The point of error assumes that Shelton had
earlier waived his Fifth Amendment rights, but appellant did not assert this claim in the trial court
nor has he briefed the matter on appeal. See Tex. R. App. P. 74(f). Our own examination shows
that on direct examination Shelton admitted that he used drugs and manufactured "speed," but that
he had never been arrested or convicted. On cross-examination it was shown he was a police
informant. Appellant does not point out the relevancy of his inquiry, or how he was harmed by
not being able to elicit whether prior to trial Shelton had confessed his criminal conduct to law
enforcement authorities. The eighth point of error is overruled.

 In his ninth and tenth points of error, appellant complains that the trial court erred
when it refused to instruct the jury on the lesser included offenses of involuntary manslaughter
and criminally negligent homicide.

 There is a two-pronged test for determining whether a jury must be charged on a
lesser included offense. It has become known as the "Royster" or "Royster-Aguilar" test. Aguilar
v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1983); Royster v. State, 622 S.W.2d 442, 447
(Tex. Crim. App. 1981). First, the lesser included offense must be included within the proof
necessary to establish the offense charged. Second, there must be some evidence in the record
that if the defendant is guilty, he is guilty of only the lesser offense. See Kinnamon, 791 S.W.2d
at 96; Creel v. State, 754 S.W.2d 205, 210 (Tex. Crim. App. 1988). Recently, the Court of
Criminal Appeals has modified the second prong to read "second, some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only
of the lesser offense." Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993)
(emphasis in original). "In applying the two-prong test, the trial court should make a
determination as to whether the evidence of the lesser offense would be sufficient for a jury
rationally to find that the defendant is guilty only of that offense, and not the greater offense." 
Id. (emphasis added). In adhering to the Royster test, the Rousseau Court rejected the federal
standard but borrowed from it. The federal standard set forth in Cordova v. Lynaugh, 838 F.2d
764 (5th Cir.), cert. denied, 486 U.S. 1061 (1988), provides that a lesser included offense
instruction should be given "if the evidence would permit a jury rationally to find [a defendant]
guilty of the lesser offense and acquit him of the greater." Cordova, 838 F.2d at 767 (emphasis
added). In Rousseau, the Court of Criminal Appeals noted that it was not the intent of the court
to change the substantive test of Royster, but only to interpret and clarify existing law. Rousseau,
855 S.W.2d at 673, n.4.

 In determining whether the trial court erred in failing to give a charge on a lesser
included offense, all of the evidence presented by the State and the defendant must be considered. 
Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989) (op. on reh'g); Dowden v. State,
758 S.W.2d 264, 269 (Tex. Crim. App. 1988). Entitlement to a jury instruction on a lesser
included offense must be made on a case-by-case basis according to the particular facts. 
Livingston v. State, 739 S.W.2d 311, 336 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1210
(1988); Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).

 Both involuntary manslaughter and criminally negligent homicide are lesser
included offenses of murder. Dowden, 758 S.W.2d at 270; Thomas v. State, 699 S.W.2d 845,
847 (Tex. Crim. App. 1985); DeLeon v. State, 776 S.W.2d 750, 751 (Tex. App.--Corpus Christi
1989, pet. ref'd); Tex. Code Crim. Proc. Ann. 37.09 (West 1989). This alone is not enough. 
We must determine if the second prong of the Royster test has been met.

 The distinction between murder, involuntary manslaughter and criminally negligent
homicide lies in the culpable mental state accompanying the defendant's homicidal act. "The
difference between criminally negligent homicide and involuntary manslaughter is the culpable
mental state required to establish each offense--criminal negligence for the former and recklessness
for the latter." Thomas, 699 S.W.2d at 849; see also Lewis v. State, 529 S.W.2d 550, 553 (Tex.
Crim. App. 1975).

 Section 19.07(a) of the Penal Code provides that "[a] person commits an offense
if he causes the death of an individual by criminal negligence." Tex. Penal Code Ann. § 19.07(a)
(West 1989). Section 6.03(d) of the Penal Code defines criminally negligent conduct:



 A person acts with criminal negligence, or is criminally negligent, with
respect to circumstances surrounding his conduct or the result of his conduct when
he ought to be aware of a substantial and unjustifiable risk that the circumstances
exist or the result will occur. The risk must be of such a nature and degree that
the failure to perceive it constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint.


Tex. Penal Code Ann. § 6.03(d) (West 1984). Thus, criminal negligence means the actor should
have been aware of the risk surrounding his conduct but failed to perceive it. Dowden, 758
S.W.2d at 270.

 In Thomas, the defendant requested an instruction on criminally negligent homicide
based on his testimony that he did not intend to shoot the victim; that it was an accident; and that
it was in self-defense. In deciding whether the defendant met the "guilty only" prong of the
Royster test, the court determined that his testimony did not show that he possessed the requisite
culpable mental state so that if guilty, he was guilty only of criminally negligent homicide. It was
reasoned:



Evidence that a defendant knows a gun is loaded, that he is familiar with guns and
their potential for injury, and that he points a gun at another, indicates a person
who is aware of a risk created by that conduct and disregards that risk. 



Thomas, 699 S.W.2d at 850. Certainly before a charge on this lesser included offense is required,
the record must contain evidence showing an unawareness of the risk. Mendieta v. State, 706
S.W.2d 651, 653 (Tex. Crim. App. 1986).

 In the instant case, appellant did not testify or offer any evidence. In examining
all of the evidence we must look to the testimony of the State's witnesses and other evidence
offered by the State. We need not repeat here the incriminating evidence of the State. Appellant
calls attention to the testimony of Marvin Davis, who could possibly give evidence as to
appellant's mental state, but admits that the bottom line of Davis' testimony was "that he didn't
know anything about what had happened between the two of them while his back was turned." 
David did reveal that after the shot was fired, he walked over to appellant and pulled down
appellant's arm still holding the pistol. Evidence that appellant did not intend to kill Harper is
found in the testimony of Holly Peterson. Peterson testified that in early 1989, she overheard a
conversation between her boyfriend and appellant in which appellant admitted killing Harper and
said, "He didn't mean to." On cross-examination, Peterson admitted that she had given a sworn
statement to law enforcement authorities that appellant had stated that, "He didn't mean to. It was
an accident." Peterson testified, however, the statement was in error; and that the "accident" part
was her own sense and impression. Appellant argues that this is evidence from which the jury
could have concluded that appellant did not intentionally or knowingly cause Harper's death.

 There is no question that the actions of appellant were sufficient to indicate that he
should have been aware of the substantial and unjustifiable risk that his conduct might injure and
kill Harper. See Still v. State, 709 S.W.2d 658 (Tex. Crim. App. 1986). Whether appellant acted
intentionally or unintentionally is not the distinguishing factor in determining if the homicide was
criminal. Instead, the important issue is whether the act is voluntary or involuntary. Dowden,
758 S.W.2d at 270; Ortiz v. State, 651 S.W.2d 764, 766-67 (Tex. Crim. App. 1983). The actions
of appellant in the instant case toward Harper were all voluntary, and under the circumstances,
the issue of criminally negligent homicide was not raised.

 A person commits the offense of involuntary manslaughter if he recklessly causes
the death of an individual. Tex. Penal Code Ann. § 19.05(a)(1) (West 1989). And section
6.03(c) of the Penal Code provides that:



 A person acts recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the circumstances
exist or the result will occur. The risk must be of such a nature and degree that
its disregard constitutes a gross deviation from the standard of care that an ordinary
person would exercise under all the circumstances as viewed from the actor's
standpoint.


Tex. Penal Code Ann. § 6.03(c) (West 1974). The specific intent to kill is not an element of the
offense of involuntary manslaughter. Dowden, 758 S.W.2d at 271. The reckless mental state is
satisfied by evidence which indicates that the defendant consciously disregarded a known
substantial and unjustifiable risk that the serious bodily injury would occur; a risk of such a nature
that its disregard constitutes a gross deviation from the standard of care an ordinary person would
exercise under the circumstances. Hayes v. State, 728 S.W.2d 804, 809 (Tex. Crim. App. 1987). 
In the instant case, there is no evidence that appellant is guilty only of consciously disregarding
a known substantial and unjustifiable risk that serious bodily injury would result.

 Appellant's claim that he did not "mean to" kill Harper, made months after the fact,
raises an issue as to his culpable mental state only if it is taken alone and out of context. The
statement loses its force within the context of the evidence as a whole. A defendant's statement
that he did not intend to kill cannot be plucked out of the record and examined in a vacuum. 
Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). The instant case is unlike cases
in which part of a defendant's testimony could be reasonably believed by a jury in the context of
the facts, so as to support a charge on the lesser included offense. Id. Taken alone, appellant's
statement cannot fit within the context of the other facts concerning the offense. "As such it
cannot be proffered and introduced evidence which, when considered with all of the evidence in
the case, amounts to some evidence that the defendant is guilty only of a lesser included offense." 
Id. at 585 (Miller, J. concurring).

 Appellant was shown to be a violent man, who had beaten Harper, sometimes
seriously, on numerous occasions. Appellant owned a number of firearms and was habitually
armed. He often used a pistol to hit Harper and to emphasize his threats to kill her. Appellant
had gone so far as to have a crude grave dug as a graphic illustration of what would happen to
Harper if she "crossed" him. On the fatal day, Harper was seated in a chair as appellant paced
the floor in front of her, a pistol in his pocket. Seconds later, appellant pulled the pistol and shot
Harper where she sat. Davis testified that appellant said nothing to indicate that the shooting was
unintended, made no effort to summon help for Harper, and showed no signs of remorse for her
death. The evidence as a whole does not support a rational inference that appellant was
consciously disregarding the risk of death that his conduct created. The district court did not err
by refusing to instruct the jury on the lesser offense of involuntary manslaughter. See Rousseau,
855 S.W.2d at 673.

 In support of his ninth and tenth points of error, appellant relies upon Saunders v.
State, 840 S.W.2d 390 (Tex. Crim. App. 1992), a pre-Rousseau case. In Saunders, it was held
that a defendant may be shown to be guilty of the lesser offense if the evidence presented is
subject to "different interpretations." Saunders, 840 S.W.2d at 392. Here, appellant relies upon
Peterson's testimony. In Saunders, the defendant was convicted of murdering a five-month old
infant. The evidence showed that the cause of death was an epidural hemorrhage stemming from
fractures in the skull that resulted when appellant squeezed the child's head with his hand. A
doctor testified that little pressure was required to cause the fractures, and that no noise would
accompany them. The court wrote:



 Although other circumstances existed from which a jury could conclude
appellant knew his treatment of [the child] might kill him, a jury could also
conclude based on the same evidence that appellant may not have known his
actions could kill the baby, even though he ought to have been aware of this risk. 
Under the latter interpretation, appellant could have been guilty only of the lesser
offense of criminally negligent homicide. Because this evidence was subject to
different interpretations and raised the issue that appellant was criminally negligent
in squeezing the child's head, appellant's requested instruction on criminally
negligent homicide should have been given.


Saunders, 840 S.W.2d at 392.

 The cause before us differs from Saunders in at least one crucial respect: appellant
killed Harper with a firearm, a deadly weapon per se. An intent to kill may be inferred from the
defendant's use of a deadly weapon per se. Flannagan v. State, 675 S.W.2d 734, 744 (Tex.
Crim. App. 1984). Although this inference may be rebutted, there must be some evidence that
the defendant was guilty only of reckless or negligent conduct before an instruction on the lesser
offense is required. Mendieta v. State, 706 S.W.2d at 653. We do not understand Saunders to
hold that causing the death of another by the use of a deadly weapon per se is, in itself, an
ambiguous act subject to different interpretations regarding the defendant's culpable mental state. 
We are, therefore, unpersuaded by appellant's argument that he might have been recklessly
waving the pistol in the air when the fatal shot was fired, or that he might have been attempting
to shoot into the wall when Harper suddenly moved into the path of the bullet. Where the
defendant kills another person with a deadly weapon per se, more than speculation of this sort is
required before the submission of an instruction on involuntary manslaughter or criminally
negligent homicide is necessary. The ninth and tenth points of error are overruled.

 In his eleventh point of error, appellant argues that the trial court erred by failing
to grant appellant's request to charge the jury on the lesser included offense of aggravated assault. 
Although there was no special requested charge, appellant did object to the failure to include a
charge on aggravated assault.

 A person commits aggravated assault if he intentionally, knowingly, or recklessly
causes serious bodily injury to another or if, using a deadly weapon, he intentionally or knowingly
threatens another with imminent bodily injury. Tex. Penal Code Ann § 22.01(a)(1), (2) (West
1989), § 22.02(a)(1), (4) (West Supp. 1993). In proving that appellant shot and killed Harper as
alleged, the State also proved that appellant committed an aggravated assault. Again, the
contested issue is whether there is evidence from which the jury could rationally find that
appellant, if guilty, was guilty only of the lesser offense, not the greater offense. Rousseau, 855
S.W.2d at 673; Royster, 622 S.W.2d at 446.

 Citing Saunders, appellant urges that "had the jury been instructed on the lesser
included offense of aggravated assault it is clear that one of the inferences raised by the evidence
concerning appellant's intent would be that appellant intended to threaten the deceased (while not
intending to kill her and thereafter caused serious bodily injury and/or used a deadly weapon and
the jury would have been free to find appellant guilty of the lesser offense." (emphasis in original) 
We have already explained why we are unpersuaded by appellant's reliance on Saunders. We
again decline to hold that the trial court was required to submit a lesser included offense
instruction based solely on speculation as to what might have been going through appellant's mind
when he shot and killed Harper. We also decline to hold, for reasons previously discussed, that
appellant's remark that he did not "mean to" kill Harper warranted an instruction on aggravated
assault. The evidence as a whole does not support a rational finding that appellant, if guilty, was
guilty only of aggravated assault. Godsey, 719 S.W.2d at 584-85; see also Dowden, 758 S.W.2d
at 269-70. Point of error number eleven is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Affirmed

Filed: September 15, 1993

Publish












* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (1988).
1.   During cross-examination, Davis acknowledged making an earlier statement in which he
described appellant's words as, "Oh, my God, I killed her." On direct examination, Davis
testified that at the time of the shooting appellant made no statement that he did not intend to kill
Harper. Davis stated that the shooting was no accident and was not done in self-defense.
2.   Section 6.03(a), (b) provide:



 (a) A person acts intentionally, or with intent, with respect to the nature
of his conduct or to a result of his conduct when it is his conscious objective or
desire to engage in the conduct or cause the result.


 (b) A person acts knowingly, or with knowledge, with respect to the
nature of his conduct or to circumstances surrounding his conduct when he is
aware of the nature of his conduct or that the circumstances exist. A person acts
knowingly, or with knowledge, with respect to a result of his conduct when he is
aware that his conduct is reasonably certain to cause the result.
3.   Paragraphs IV and V of the trial court's charge read:



IV.



 You are insstructed [sic.] that a person commits an offense only if he
voluntarily engages in conduct, including an act, an omission or possession. 
Conduct is not rendered involuntary merely because the person did not intend the
results of his conduct.


V.


 Therefore, if you believe from the evidence beyond a reasonable doubt that
on the occasion in question the defendant, Daniel Navarro, did cause the death of
Cynthia Harper by shooting her with a gun, as alleged in the indictment, but you
further believe from the evidence, or you have a reasonable doubt thereof, that the
shooting was a result of an accidental discharge of the gun and was not the
voluntary act or conduct of the defendant, you will acquit the defendant and say by
your verdict "Not Guilty."



 These paragraphs of the charge were neither the abstract portion of charge or the
so-called application paragraph mentioned above.
4.   See Ethington v. State, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991); cf. Johnson v. State,
803 S.W.2d 272, 291 (Tex. Crim. App. 1990).
5.   After trial, appellant did file a formal bill of exception approved by the trial court
concerning an unrecorded bench conference during Shelton's cross-examination. Such bill merely
reflects that appellant's counsel informed the trial court that counsel intended to question Shelton
about his involvement as a police informant and the extent of that cooperation in order to
demonstrate his bias and motive for testifying as a State's witness. See Hurd v. State, 725 S.W.2d
249, 252 (Tex. Crim. App. 1987). The bill does not reflect an objection. The trial court did
permit appellant to establish that Shelton was an informant, etc.
6.   In a murder prosecution, the failure of the trial court to limit testimony of a witness relative
to antecedent quarrels and assaults by the defendant upon the deceased and to instruct the jurors
that they could only consider such testimony as tending to show motive was not error, since
motive was part of proof to establish main offense. Cantu v. State, 135 S.W.2d 705, 709-10
(Tex. Crim. App. 1940), cert. denied, 312 U.S. 689 (1941).
7.   In complying with Rule 74(d) of the Texas Rules of Appellate Procedure, appellant has
placed in parentheses after the point of error reference only to the place in the record where he
made objections to the court's charge.
8.   Tex. Penal Code Ann. § 19.06(a) (West Supp. 1993).