TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00438-CR







Bryan P. Suhre, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,133, HONORABLE RICK MORRIS, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of murdering his wife, Caroline Suhre. Tex. Penal Code Ann.
§ 19.02 (West 1994). The jury assessed punishment at imprisonment for ninety-nine years.

 The State's principal witness was Adam Johnson. Johnson and appellant were in the same
Army unit at Fort Hood. On the afternoon of December 12, 1995, the two men left work and drove to
the trailer house appellant shared with his wife and one-year-old son, Christopher. Caroline, who was eight
months pregnant, arrived home several hours later, at around 8:00 p.m. Appellant and Caroline began to
talk about Christopher, who had a bad cold, while Johnson played a computer game and made two
telephone calls. According to Johnson, appellant and his wife did not appear to be angry or upset.

 After completing his calls, Johnson sat down at the kitchen table. In a mirror that was in
front of him Johnson saw Caroline leave the living room and enter the kitchen. As Johnson watched,
appellant approached her from behind and hit her on the head with a metal flashlight. Johnson turned and
saw appellant standing with the flashlight in his hand, an angry look on his face. Johnson then looked at
Caroline, who was lying on the kitchen floor with a pool of blood forming around her head. Other than
some twitching of her fingers, Caroline was motionless. Johnson felt for her pulse without success.

 Johnson testified that he "was in shock." He added, "I went into a panic, and I told him we
need to get out of here, let's go, let's get out of here." Johnson and appellant left the house with
Christopher. Appellant drove Caroline's car to a nearby grocery store. Johnson and the child followed
in appellant's pickup truck. Appellant left the car in the grocery store parking lot and joined Johnson and
Christopher in the pickup. Appellant told Johnson he needed his help. Johnson understood this to mean
help in disposing of Caroline's body. When Johnson said he wanted no part of it, appellant replied that he
was part of it. Johnson testified, "I didn't know what to do. The only thing I knew was that I wanted to
go home." Johnson promised appellant to "keep [his] mouth shut" and asked appellant to take him home. 
Appellant did so.

 The following morning, appellant gave Johnson a ride to work. Appellant told Johnson that
he had taken care of everything, and later told him that "he had gotten rid of the body off a country road
off a bridge." Appellant said that he was going to report his wife as missing, and he and Johnson agreed
to tell a false story to the police. Johnson subsequently gave two written statements to the police that he
later admitted were false. Johnson ultimately told the police the truth after consulting a lawyer.

 On December 17, Caroline Suhre's body was found floating in Darr Creek, approximately
nineteen miles from appellant's house. The medical examiner found a laceration to the back portion of the
skull caused by a blow with a blunt object. Blood matching that of the deceased was found on the kitchen
floor of the Suhre's trailer.

 Appellant testified on his own behalf. According to appellant, he and Caroline argued on
the night in question about her seeing another man. Appellant left the house in Caroline's car after giving
the keys to his pickup to Johnson. He said he did this so his wife could not leave home. Appellant drove
to a shopping mall, then to the grocery store. There, he was joined by Johnson in the pickup. Johnson told
appellant that Caroline "had took off" "out the back door." Appellant left his wife's car in the parking lot
and returned to the house with Johnson. Caroline was not there nor could she be found in the trailer park. 
Appellant admitted that he initially reported that Caroline left the house in her car. He explained that he
misstated the circumstances of his wife's disappearance "as an excuse for the police to look for her." The
defense also called several witnesses who testified to appellant's truthful character and to Johnson's lack
of trustworthiness.

 In his first point of error, appellant contends the district court should have declared a
mistrial after the State attempted to use his assertion of the right to counsel as evidence of guilt. Lieutenant
Ray Maxon of the Bell County Sheriff's Department testified that he spoke to appellant following the
discovery of Caroline's body. Maxon said that appellant first "showed no emotions." Then, when Maxon
attempted to question him, appellant "became agitated, feeling like I was accusing him of doing harm to his
wife." Maxon continued, "Well, after he became agitated he advised me that he was going to seek the
advice of an attorney, at which time that we terminated any --." Appellant objected and the jury was
removed. Appellant complained that the jury might view appellant's assertion of his right to counsel as
evidence of guilt and moved for a mistrial. The court sustained the objection but overruled the motion for
mistrial. When the jurors returned, the court instructed them to disregard appellant's request for an attorney
and not to consider it as a circumstance against him. The prosecutor then resumed his questioning as
follows: "Mr. Maxon, what I want to do is to talk about the conversation that you had with the Defendant
before he indicated for the first time that he may want to talk to an attorney." Appellant again objected. 
The court sustained the objection, admonished the prosecutor "not to refer to that last matter again," and
instructed the jury to "disregard that portion of the question dealing with a request for an attorney." The
court again refused to grant a mistrial.

 Evidence that a defendant invoked his right to counsel is inadmissible as evidence of guilt. 
Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). The State argues that Hardie is not
applicable here because, unlike the defendant in that case, appellant was not in custody during the interview
with Maxon and had not been advised of his right to counsel. We do not decide whether Hardie was
violated because we conclude that the district court's instructions to disregard the references to counsel
were sufficient to cure any error. Guzmon v. State, 697 S.W.2d 404, 408 (Tex. Crim. App. 1985). 
Point of error one is overruled.

 Appellant's second point of error complains of the admission of State's exhibit 30, a
photograph of the deceased's face taken at the time of autopsy. The admissibility of a photograph is within
the sound discretion of the trial court. Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). 
Appellant contends the court abused its discretion because the inflammatory effect of the photograph
substantially outweighed its probative value. Tex. R. Crim. Evid. 403.

 Exhibit 30 is unpleasant to see, showing as it does the decompositional effect of five days
in water. A photograph is not inadmissible, however, merely because it is gruesome. Sonnier, 913
S.W.2d at 519. The medical examiner testified to the decomposition of the body and the difficulties this
presented in determining the precise injuries suffered by the deceased. The medical examiner stated that
the photograph was helpful as an aid to this testimony. We cannot say the district court abused its
discretion by admitting the exhibit. Point of error two is overruled.

 In point of error three, appellant contends the court erroneously overruled his objections
to questions asked during cross-examination of defense witness Anthony Hart. Hart was a member of the
military unit to which appellant and Johnson belonged. He testified that appellant had a reputation in the
unit for being truthful. Hart also testified that Johnson's reputation for truthfulness was "not very good" and
that, in his personal opinion, Johnson was not truthful. See Tex. R. Crim. Evid. 405(a).

 During cross-examination, Hart was questioned as follows:


Q.  Did you know that Adam Johnson has testified and told this jury that the Defendant
used a flashlight like that to smash Caroline in the back of the head in the mobile home?


MR. POTTER:  Your Honor, if it please the court. Sir, is this the proper impeachment for
somebody as to someone's reputation for truth and veracity? I think it's far afield and it's
not relevant, you Honor.


THE COURT:  Overruled for right now.


MR. POTTER:  All right.


Q.  (By Mr. Carroll.) Do you know that's what he's testified, that he saw your friend
Bryan do to Caroline?


A.  That's what I've heard, sir.


Q.  Did you know that inside the mobile home on the kitchen floor underneath some
molding, and in very inconspicuous places they found her blood exactly there?


A.  No, sir.


Q.  Did you know that her body was found floating face down in a creek out on the other
side of Salado?


. . .


A.  That's what I heard on the news.


MR. POTTER: Your Honor, again, how can this be impeachment as to the question --


MR. CARROLL:  I'm not talking to him about the reputation stuff.


THE COURT:  Hold on, gentlemen. Address your remarks to the court. Your objection
is overruled.


Q.  (By Mr. Carroll.) Do you realize, Mr. Hart, that is the way that she ended up looking
after about five days in the water?


A.  I see that now, sir.


Q.  Do you think Adam Johnson would lie about something this serious?


A.  I don't know, sir. Maybe to cover himself. I don't know.



Appellant urges that it was improper to permit the prosecutor to question Hart regarding the testimony
adduced from other witnesses at trial, as that could not be relevant to Hart's knowledge of appellant's
reputation prior to the offense. Tex. R. Crim. Evid. 405; see Henderson v. State, 617 S.W.2d 697, 699
(Tex. Crim. App. 1981) (error to base "have you heard" questions on facts of case on trial). Appellant's
general objections, however, were not adequate to preserve this contention for review. Tex. R. App. P.
52(a); Tex. R. Crim. Evid. 103(a)(1). Further, if the prosecutor's questioning was improper impeachment,
the error was harmless because Hart never indicated the effect the charged offense had on appellant's
reputation or on his opinion of appellant's character. Henderson, 617 S.W.2d at 700. Point of error three
is overruled.

 Appellant's fourth point of error also complains of improper impeachment of a defense
witness. Sean Cockburn was another member of appellant's military unit. Cockburn testified that appellant
had a good reputation for telling the truth and that his opinion of appellant's truthfulness also was good. 
Cockburn testified that Johnson's reputation for truth and veracity was bad, and that he was "a known liar
throughout the unit."

 During cross-examination, Cockburn acknowledged that appellant's initial story regarding
his wife's disappearance was false, but said, "One lie doesn't make you a bad person." The prosecutor then
asked, "How about if, if you've smashed your wife in the back of the head and then dumped her body in
a creek and you lie to this jury and say you didn't do it, do you think that one lie would make you a bad
person?" Appellant objected, "That hasn't been established. That's the whole purpose of this trial and,
therefore, that's an improper question for impeachment of truth and veracity." After the objection was
overruled, Cockburn replied, "Yes, it would be a good lie, sir, but it hasn't been established, sir."

 Again, appellant argues that it was improper to impeach Cockburn by questioning him
regarding the facts of the case on trial. As before, appellant's trial objection was not sufficient to preserve
this contention. We also conclude that any error was harmless because Cockburn's opinion of appellant's
character was not shown to have been changed by the allegations for which appellant was on trial. Point
of error four is overruled.

 Appellant's fifth point of error complains of the prosecutor's jury argument at the
punishment stage. The prosecutor remarked, "Someone told me about this case, that they had seen those
horrible pictures you had to look at and they didn't sleep last night." Appellant objected that this was
outside the record. The objection was sustained and the jury was instructed to disregard, but a motion for
mistrial was overruled. Because the prosecutor's remark was not so prejudicial as to be incurable by the
instruction to disregard, the court did not err by refusing to declare a mistrial. Long v. State, 823 S.W.2d
259, 267 (Tex. Crim. App. 1991). Point of error five is overruled.

 Appellant's remaining points of error urge that he received ineffective assistance of counsel
at the guilt stage of trial. To prevail on this claim, appellant must show that his attorneys made such serious
errors that they were not functioning effectively as counsel and that these errors prejudiced the appellant's
defense to such a degree that he was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); and see Moore v. State, 694
S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143 (Tex. App.--Austin
1992, pet. ref'd). In reviewing a claim of ineffective assistance, we must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Appellant contends that the most serious error committed by trial counsel was the failure
to request an accomplice witness instruction regarding Adam Johnson. Appellant does not contend that
Johnson was an accomplice as a matter of law, but urges that a question of fact should have been submitted
to the jury. The question whether a witness was an accomplice should be submitted to the jury, however,
only if there is a conflict in the relevant evidence. Harris v. State, 645 S.W.2d 447, 456 (Tex. Crim. App.
1983); Navarro v. State, 863 S.W.2d 191, 201 (Tex. App.--Austin 1993), pet. ref'd, 891 S.W.2d 648
(Tex. Crim. App. 1994). Johnson admitted that he was present when the offense was committed and that
he initially agreed to conceal the crime, but this conduct did not make him an accomplice. Navarro, 863
S.W.2d at 201. While appellant denied committing the offense and attacked Johnson's credibility, there
was no other evidence that Johnson was an accomplice to the murder. Because there was no disputed fact
issue relevant to Johnson's status as an accomplice, counsel's failure to request such an instruction was not
ineffectiveness.

 Appellant next complains that his trial counsel did not properly preserve error regarding
extraneous offense testimony. The State asked the medical examiner if Caroline Suhre's unborn child "was
fully developed and viable" at the time of her death. After asking that the jury be removed, defense counsel
objected that testimony regarding viability was improper because "what we're ending up doing here is
having not one murder trial, but possibly two" and that "we're getting into uncharged misconduct." The
objection was overruled and the medical examiner testified that, in his opinion, the child was viable at the
time of Caroline's death. Contrary to appellant's contention on appeal, trial counsel's objection was
adequate to preserve error regarding the relevance of the viability evidence. Montgomery v. State, 810
S.W.2d 372, 387 (Tex. Crim. App. 1991) (opinion on rehearing); Tex. R. Crim. Evid. 404(b). Although
counsel did not object that the relevance of the testimony was outweighed by the danger of unfair prejudice,
there is no evidence that counsel's failure to make the objection was the result of ignorance or ineptitude
rather than reasoned trial strategy.

 Appellant also complains that trial counsel failed to preserve error regarding State's exhibit
30, the autopsy photograph discussed in point of error two. In that point of error, we considered and
overruled on the merits appellant's contention that the relevance of the exhibit was outweighed by the
danger of unfair prejudice. Appellant does not state what additional objection should have been made by
trial counsel. No ineffectiveness is shown.

 Appellant has not proved that his attorneys at trial made such serious errors that they were
not functioning effectively as counsel. Points of error six through nine are overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: December 19, 1996

Do Not Publish



l was overruled. Because the prosecutor's remark was not so prejudicial as to be incurable by the
instruction to disregard, the court did not err by refusing to declare a mistrial. Long v. State, 823 S.W.2d
259, 267 (Tex. Crim. App. 1991). Point of error five is overruled.

 Appellant's remaining points of error urge that he received ineffective assistance of counsel
at the guilt stage of trial. To prevail on this claim, appellant must show that his attorneys made such serious
errors that they were not functioning effectively as counsel and that these errors prejudiced the appellant's
defense to such a degree that he was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); and see Moore v. State, 694
S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143 (Tex. App.--Austin
1992, pet. ref'd). In reviewing a claim of ineffective assistance, we must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Appellant contends that the most serious error committed by trial counsel was the failure
to request an accomplice witness instruction regarding Adam Johnson. Appellant does not contend that
Johnson was an accomplice as a matter of law, but urges that a question of fact should have been submitted
to the jury. The question whether a witness was an accomplice should be submitted to the jury, however,
only if there is a conflict in the relevant evidence. Harris v. State, 645 S.W.2d 447, 456 (Tex. Crim. App.
1983); Navarro v. State, 863 S.W.2d 191, 201 (Tex. App.--Austin 1993), pet. ref'd, 891 S.W.2d 648
(Tex. Crim. App. 1994). Johnson admitted that he was present when the offense was committed and that
he initially agreed to conceal the crime, but this conduct did not make him an accomplice. Navarro, 863
S.W.2d at 201. While appellant denied committing the offense and attacked Johnson's credibility, there
was no other evidence that Johnson was an accomplice to the murder. Because there was no disputed fact
issue relevant to Johnson's status as an accomplice, counsel's failure to request such an instruction was not
ineffectiveness.

 Appellant next complains that his trial counsel did not properly preserve error regarding
extraneous offense testimony. The State asked the medical examiner if Caroline Suhre's unborn child "was
fully developed and viable" at the time of her death. After asking that the jury be removed, defense counsel
objected that testimony regarding viability was improper because "what we're ending up doing here is
having not one murder trial, but possibly two" and that "we're getting into uncharged misconduct." The
objection was overruled and the medical examiner testified that, in his opinion, the child was viable at the
time of Caroline's death. Contrary to appellant's contention on appeal, trial counsel's objection was
adequate to preserve error regarding the relevance of the viability evidence. Mo