**Opinion issued April 17, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-13-00296-CR**

_____

**DAVID GLEN MAYS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Court Case No. B-120056-R**

---

**MEMORANDUM OPINION**

Appellant David Glen Mays was indicted for two counts of attempted capital murder.  A jury found him guilty of both counts and assessed punishment at life in prison.  Mays appeals, contending that (1) the evidence was insufficient to support

his conviction and (2) the State did not present sufficient evidence to corroborate an accomplice's testimony. We affirm.

## Background

In May 2011, Mays was living with his girlfriend, Tiffany Thompkins, in a mobile home. Based on information that Mays was selling drugs from the mobile home, City of Orange Police Department officers obtained a no-knock search warrant.

On May 29, 2011, five officers executed the warrant. Sergeant R. Estrello testified that he and Sergeant R. Ashworth, III, were on the front porch by the door because they were assigned to enter the residence first, and the other officers were lined up behind them. Although the officers had a no-knock warrant, Ashworth knocked on the door because they could not open the locked burglar bars on the front door.

Estrello testified that when Ashworth knocked, a male voice responded from inside the mobile home, "Who is it?" Ashworth yelled, "It's the police. Open up." Estrello testified that no one opened the door and the officers heard someone running around in the mobile home. Ashworth testified that he announced the search warrant a second time and heard someone running around inside and saw the figure of a person, through a curtain, running to the right of the front door, toward the northern side of the mobile home.

Constable R. Straus from the Orange County Sherriff's Department testified that at that point—when the officers heard someone running inside the mobile home—he observed a female looking out of the window that was to the left of the front door—on the southern side of the mobile home. Estrello and Ashworth started ramming the locked burglar bars, attempting to make a forced entry, and the officers continuously yelled, "Search warrant. Police. Search warrant." Estrello, Ashworth, and Straus testified that they heard the male voice—coming from the northern side of the mobile home—ask again, "Who is it?" Officer J. Laughlin of the City of Orange Police Department, who also assisted in executing the search warrant, likewise testified that he twice heard the male voice coming from the northern side of the mobile home.

While the other officers were seeking to gain entry though the front door, Straus used his flashlight to break the window above the kitchen sink where he had seen the woman standing. After Straus broke the window, the officers heard a gunshot. Ashworth testified that the gunshot came from the same area in which they had heard the male voice—the northern part of the mobile home. Estrello and Ashworth testified that after the gunshot, they heard someone running towards the southern end of the mobile home. Straus testified that once he gained entry, he saw Mays running to the bathroom in the southern end of the mobile home.

Straus found Thompkins and Mays in the bathroom. Thompkins was "kind of hunkered down on her knees with her hands up towards her head" and Mays was leaning over the bathtub. Straus testified that Mays was irate, verbally abusive, and resisted arrest, even after he was handcuffed. Mays and Thompkins were the only people in the mobile home.

After handcuffing Mays and Thompkins and placing them in patrol cars, the officers searched the mobile home. Lieutenant K. Reneau of the Pinehurst Police Department testified that he found a firearm—a .40 caliber Glock, loaded with a live round in the chamber—in the clothes hamper in the bathroom where Mays and Thompkins were found. Reneau also testified that there was a .40 caliber shell casing in the hallway, and Laughlin testified that the bullet's shell casing was found on the floor to the right of the front door. Identification technician Stephen Ward was called to the scene to process the gunshot evidence and testified that there was a bullet hole in the sheetrock immediately to the right of the front door, which was the northern side of the door.

Both Mays's and Thompkins's hands were swabbed for gunshot residue. Russell Thomas White, a chemist with the Department of Public Safety Crime Laboratory Service, testified that both samples tested positive for gunshot primer residue particles and that he could not determine who shot the firearm from the residue samples. White testified that primer residue can reach the hands of anyone

4

near the shooter and that a person can get gunshot primer residue on their hands from being near a weapon when it was fired or from touching the weapon after it was fired.

The indictment charged Mays with attempted capital murder of Ashworth and Estrello. Thompkins pleaded guilty to felony possession of a controlled substance, but she was not indicted for attempted capital murder. In exchange for her testimony, Thompkins received probation.

Thompkins testified at trial that when the officers executed the warrant she was cooking fried chicken in the kitchen while Mays was cutting and bagging crack cocaine in the living room. Thompkins testified that Mays was acting nervous and told her that somebody had told him that the "laws was riding." Thompkins testified that when Straus broke the window, she ran to the bathroom, which was in the southern end of the mobile home, and shut the door because she was scared.

Thompkins testified that she did not shoot the firearm and was already in the bathroom when she heard the gunshot. Thompkins testified that after she heard the gunshot, Mays entered the bathroom, dropped a firearm on the floor in front of Thompkins, and attempted to dispose of the cocaine in the bathtub. Thompkins picked up the firearm, placed it in the clothes hamper, and then hid behind the door. Thompkins testified that although she saw Mays holding the firearm when

he went in the bathroom to hide, she did not see him shoot the firearm. She testified that at the time, she thought that the police, not Mays, fired the shot. Thompkins admitted that she lied when she told the officers at the scene that she did not know anything about the firearm.

## Discussion

In two issues, Mays (1) contends that he was wrongly convicted on the uncorroborated testimony of his accomplice, Thompkins, and (2) challenges the sufficiency of the evidence to support his conviction.

## Uncorroborated Accomplice Witness Testimony

### A. Applicable Law and Standard of Review

An accomplice is a person who participates in an offense, before, during, or after the commission of a crime and acts with the required culpable mental state. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (en banc). To participate in an offense, the witness must affirmatively act to promote the commission of the offense. *Paredes*, 129 S.W.3d at 536.

A witness is not an accomplice simply because he knew of the offense and did not disclose it. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) (en banc); *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). And evidence showing that a witness was present during the commission of the crime

6

and participated in concealing the crime is not necessarily sufficient to raise the issue of accomplice-witness status. *Smith v. State*, 721 S.W.2d 844, 851 (Tex. Crim. App. 1986) ("Since there was no evidence adduced at trial to show anything other than Thompson's presence at the scene of the offense and his aid in carrying the body to appellant's truck, we hold that the trial court did not err in refusing to instruct the jury that he was an accomplice witness."); *see also Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987) ("If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses." (citations omitted)). The critical question is whether there is sufficient evidence in the record to support a charge for the same offense against the witness alleged to be an accomplice. *Blake*, 971 S.W.2d at 455. Whether the person is actually charged and prosecuted for his or her participation is not relevant; what matters is the evidence in the record. *Id.*

**B. Analysis**

In his second issue, Mays contends that Thompkins was an accomplice and that he was wrongly convicted on her uncorroborated testimony because it was the only evidence linking him to the crime.

To be an accomplice, a person must affirmatively promote the commission of the offense. *Paredes*, 129 S.W.3d at 536. The evidence reflects that Thompkins

7

was first in the kitchen and had run to the bathroom by the time the shot was fired. No evidence places Thompkins on the northern side of the mobile home from which the testimony of both the on-scene officers and forensic investigator demonstrated the shot was fired. Likewise, no evidence suggests Thompkins encouraged Mays to fire the weapon.

Mays argues that Thompkins became an accomplice by placing the firearm in the clothes hamper and falsely denying knowing about the firearm. But a witness does not become an accomplice by concealing evidence after a crime. *See Druery v. State*, 225 S.W.3d 491, 500 (Tex. Crim. App. 2007) (holding that witness who merely assisted after the fact in the disposal of a body and firearm after a murder was not an accomplice to murder); *Roys v. State*, 416 S.W.3d 229, 234 (Tex. App.—Amarillo 2013, pet. ref'd) (holding that assisting murderer in disposing of murder weapon after murder does not make one an accomplice); *Roden v. State*, 338 S.W.3d 626, 630 (Tex. App.—Fort Worth 2011, pet. ref'd) (holding that accomplice-witness instruction not required when evidence showed that witness was inside appellant's house with stolen property but also showed that witness did not enter burglarized house and steal property); *Navarro v. State*, 863 S.W.2d 191, 202 (Tex. App.—Austin 1993, pet. ref'd) (holding that witness was not accomplice even though he was present at the time of the murder, he failed to

disclose the crime, and hid the weapon after the murder).  Accordingly, we hold

that Thompkins was not an accomplice.[1]

We overrule Mays's second issue.

## Sufficiency of the Evidence

### A.     Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence

in the light most favorable to the verdict and determine whether any rational trier

of fact could have found the essential elements of the offense beyond a reasonable

doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);

*Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc).  The

standard is the same for both direct and circumstantial evidence cases.  *King v.*

*State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (en banc).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the

credibility of any witnesses, as this is the function of the trier of fact.  *See*

*Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We therefore

---

[1]     The trial court did not submit an instruction to the jury on Thompkins's status as an accomplice witness as a matter of law or as a question of fact.  Mays did not request an accomplice instruction and did not object to the charge on that basis. To the extent Mays is complaining about the trial court failing to submit an instruction on accomplices to the jury, we conclude that the trial court did not err because we hold Thompkins was not an accomplice. *See Cocke v. State*, 201 S.W.3d 744, 747–48 (Tex. Crim. App. 2006) (stating that the trial court is not required to give the jury an accomplice witness instruction when the evidence is clear that the witness is not an accomplice either as a matter of law or as a matter of law).

resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (en banc), and "defer to the jury's credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

**B.     Applicable Law**

Under section 19.02(b)(1), a person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). In the absence of other evidence, the jury may presume the intent to kill from the use of a deadly weapon. *Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (quoting *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (en banc) (holding that when "a deadly weapon is used in a deadly manner, the inference is almost conclusive that [the appellant] intended to kill . . .")). A firearm, such as a handgun, is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West 2011).

A person commits capital murder when he commits murder under section 19.02(b)(1) and the murder is committed upon "a peace officer . . . who is acting in

the lawful discharge of an official duty and who the person knows is a peace officer." TEX. PENAL CODE ANN. § 19.03(a)(1) (West Supp. 2013). A police officer is a peace officer. TEX. CODE CRIM. PROC. ANN. ART. § 2.12(3) (West Supp. 2013). A person commits the offense of attempted capital murder if, with specific intent to commit capital murder, the person "does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a) (West 2011).

**C.    Analysis**

We conclude the evidence supports Mays's conviction. It is undisputed that only two people—Mays and Thompkins—were in the mobile home when the shot was fired. Officers Estrello, Ashworth, Straus, and Laughlin, who helped execute the warrant, each testified that immediately before the gunshot, they heard a male say, "Who is it?" They each also testified that the voice and the gunshot came from the northern side of the mobile home. Laughlin, who was present when the shell casing was found, and Ward, who later investigated the scene, also testified, based on their investigation, that the gunshot came from the northern side of the mobile home.

Straus testified that he saw Thompkins in the kitchen, on the southern side of the mobile home, just before the shot was fired, and that he saw Mays running from the northern side of the mobile home towards the southern end just after. The

11

only evidence of Thompkins's whereabouts placed her on the opposite side of the mobile home just before the gunshot. She testified that she did not shoot the firearm and that she was in the bathroom when the shot was fired. Thompkins also testified that after she heard the gunshot, Mays ran into the bathroom holding the firearm.

Mays contends the evidence was insufficient to prove he committed the attempted capital murder because none of the officers saw Mays shoot the firearm, and there was legally insufficient evidence to show that Mays, not Thompkins, who admitted lying about the firearm, was the shooter. But eyewitness identification is not required for a conviction, *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (eyewitness identification is not necessary to identify perpetrator), and Thompkins's credibility was a factor for the jury to consider in weighing the evidence. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (stating that appellate courts must defer to the jury's determinations of witnesses' credibility); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating "[t]he jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record"); *Lowe v. State*, No. 14-10-01049-CR, 2011 WL 7984631, at *2 (Tex. App.—Houston [14th Dist.] Feb. 16, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's

12

argument that evidence was insufficient to support conviction because witness was not credible because witness had lied to police was not persuasive).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that Mays committed the offense of attempted capital murder. *See Garza v. State*, 398 S.W.3d 738, 745 (Tex. App.—Corpus Christi 2010, pet. ref'd) (holding that although no one actually saw appellant pull trigger of firearm and shoot victim, evidence that immediately after victim was shot, appellant was only person standing nearby holding firearm and appellant left the scene was sufficient to support murder conviction); *Grayson v. State*, No. 14-04-00226-CR, 2005 WL 1669537, at *2–3 (Tex. App.—Houston [14th Dist.] July 16, 2005, pet. ref'd) (mem. op., not designated for publication) (holding evidence that appellant had weapon and witnesses heard shots fired from a place at which appellant had been standing, even though no one saw appellant actually fire the weapon, was sufficient to support murder conviction).

Accordingly, we hold the evidence was legally sufficient to support the judgment and overrule Mays's first issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do Not Publish. TEX. R. APP. P. 47.2(b).